**Severo Antonio ZARATE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–94–124–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 21, 1995.

Rehearing Overruled Nov. 16, 1995.

David K. Chapman, Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Betty Marshall, Charles M. Mallin, Asst. Chief Appellate Section, Edward L. Wilkin-

son, Jamie Cummings, Karen Lynn, Asst. Crim. District Attorneys, Fort Worth, for appellee.

Before CAYCE, C.J., and DAY and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellant, Severo Antonio Zarate, appeals a sentence of confinement for twenty-five years, which was assessed by a jury after it heard his plea of guilty on one count of aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon 1994). In his first four points of error, appellant brings complaints pertaining to comments made by the prosecutor during closing arguments. In his fifth point of error, appellant claims the trial court erred in permitting the State to introduce what he calls irrelevant and prejudicial testimony concerning his prior arrests for the offenses of interference with child custody and aggravated assault. We affirm.

## BACKGROUND

Appellant was charged with a robbery which occurred at the Food Bin Grocery in Haltom City. The store manager, Gerard Choiniere, testified that, when he asked whether appellant needed assistance, appellant handed him a note which read: "This is a robbery. Give me all of your tens, twenties and hundreds." Appellant was holding a small-caliber automatic pistol. After being given about $1,250.00, appellant told Choiniere that if the manager followed him out of the store, the manager would be killed. Despite this warning, Choiniere followed appellant and shouted out an epithet directed at appellant, at which point appellant turned and fired three shots at the manager. Choiniere was not hit by bullets, but he sustained facial cuts from flying glass. A man and woman driving by the store heard the shots and wrote down the license plate number of the white Chevrolet Blazer appellant used to flee the scene.

Although appellant was arrested two or three days later, he did not confess until after he had been identified in a police line-up. Approximately $50.00 was found in the Blazer after the robbery, but the remainder of the cash was never found. Police also failed to recover the gun appellant used in the robbery.

Appellant pleaded guilty to the offense of aggravated robbery, and punishment was to the jury. Appellant testified that he had been intoxicated at the time of the offense due to his depression over a divorce, loss of child custody, and financial problems. Appellant asked the jury to consider probating his sentence, but the jury assessed punishment at confinement for twenty-five years with a $1,250.00 fine.

## POINT OF ERROR ONE

■ Appellant first complains the trial court erred by overruling his objection to the prosecutor's argument in which the prosecutor referred to the Bosnian war. The reference occurred as follows:

[PROSECUTOR]: There are three reasons that this man should not get probation. There are three reasons that he should go to prison for a long time: shot number one, shot number two, and shot number three.

Ladies and gentlemen, there is a war going on in our country and we hear a lot about what is going on in Bosnia.

[DEFENSE COUNSEL]: Objection as to improper plea for law enforcement.

THE COURT: Overruled.

After listing the acceptable areas of jury argument, appellant asserts that the argument must have been an attempt to make a plea for law enforcement, because "in no way could it be seen as being based on the evidence or any reasonable inference from the evidence," nor was it made in reference to anything appellant's attorney said during his argument. But, he contends, the reference to the war in Bosnia was an improper attempt to bring an "explosive sequence of recent public events to the attention of the jurors with the obvious hope that the jurors would analogize those events to Appellant's situation."

Appellant relies on a series of cases in which the court of criminal appeals has found

reversible error where prosecutors have referred to inflammatory public events to attempt to prejudice the jury. *See Joyner v. State,* 436 S.W.2d 141, 144 (Tex.Crim.App. 1968) (op. on reh'g) (in 1967 trial of an African–American man two weeks after racially-motivated riots in Detroit, indirect reference to riots was reversible error); *Lopez v. State,* 500 S.W.2d 844, 846 (Tex.Crim.App.1973) (where defendants were charged with murder of police officers, argument that eleven other police officers killed in America the same week as these murders was reversible error); *Escobedo v. State,* 620 S.W.2d 590, 591 (Tex.Crim.App.1981) (in burglary case where arresting officers testified that the accused fired at them during chase, argument referring to unrelated recent death of a police officer was reversible error).

Appellant claims the slaughter in the Sarajevo marketplace was prominent in the news media just before the trial, and he maintains the prosecutor "could only have sought to bring this horrible tragedy from the Bosnian War to the minds of the jurors." He argues her statement could only have been designed to compare the firing of shots into the Bosnian marketplace to appellant's having fired three shots toward a grocery store.

The State responds that a review of the argument in context shows the prosecutor was contrasting the Bosnian conflict with the "war on crime" in the United States. After appellant's objection to the Bosnian reference was overruled, the prosecutor continued:

We are involved in a war in our country. People are going into grocery stores with guns and putting them in people's backs and putting them in people's faces at daycare centers. That is what is going on here. But we don't fight our war with tanks and armies. Our army is the courtroom. And our fighters are juries. You are it. You are the ones. Juries are the ones who say enough is enough. . . .

The State maintains the prosecutor was attempting to distinguish the former conflict from the latter and that the prosecutor's argument was similar to that in *Holloway v. State,* 525 S.W.2d 165, 170 (Tex.Crim.App. 1975), where the court affirmed a conviction

after the prosecutor told jurors they could "consider what many people call a 'war on crime,' and, in essence, it is a war, except the battlefields are different." The State says there is ample authority for the proposition that closing argument which refers to a "war on crime" is not objectionable and cites a list of cases including *Decker v. State,* 717 S.W.2d 903, 909 (Tex.Crim.App.1983) (op. on reh'g) and *Saltzman v. State,* 762 S.W.2d 376, 378 (Tex.App.—Fort Worth 1988, pet. ref'd).

▪ There are four areas of proper jury argument: summation of the evidence, reasonable deductions from the evidence, answers to argument of opposing counsel, and pleas for law enforcement. *Coble v. State,* 871 S.W.2d 192, 204 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); *Hathorn v. State,* 848 S.W.2d 101, 117 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993). We agree that the reference to Bosnia was a plea for law enforcement, particularly in light of the prosecutor's subsequent contrasting of conventional and unconventional conflicts.

Appellant, in a footnote, asks us to compare *Dinklage v. State,* 185 S.W.2d 573 (Tex. Crim.App.1945) with *Bolding v. State,* 493 S.W.2d 181 (Tex.Crim.App.1973). In *Dinklage,* a World War II era case, the court reversed a conviction because the prosecutor compared the accused to a "Hun." *Dinklage,* 185 S.W.2d at 574. In *Bolding,* where the trial was more than a quarter-century after the conclusion of World War II, the court refused to reverse a conviction where the prosecutor had compared the defendant to Hitler. *Bolding,* 493 S.W.2d at 184. The *Bolding* court's reasoning was that the passage of years had made such a reference far less inflammatory than the "Hun" reference had been in 1945. *Id.*

We find the *Dinklage–Bolding* comparison instructive. In *Dinklage,* the court recognized "the strained relations between the people of these United States and the natural feelings of enmity upon their part towards anything emanating from the German government" at a time when the two nations

were at war. *Dinklage*, 185 S.W.2d at 575. The *Bolding* court considered the reference to Hitler "nothing more than the citing of an historical example." *Bolding*, 493 S.W.2d at 184. We doubt whether a reference to Hitler, such as that at issue in *Bolding*, would have been considered "nothing more than ... an ... example" had it been offered while the United States was in the midst of World War II. Similarly, the *Joyner* court, in reversing the conviction of an African-American man convicted of robbery, noted that the trial in which the improper allusion to the anarchy of the Detroit riots was uttered began fewer than two weeks after the riots started. *Joyner*, 436 S.W.2d at 144. Today, however, a reference to the Detroit riots might be considered "nothing more than ... an historical example."

Clearly, then, any comparison to current events must be evaluated in the context of the times. We do not find that, whatever attention the media may have paid to the Bosnian conflict, the shelling of the Sarajevo marketplace so permeated the consciousness as to inflame the jury. We conclude that the allusion was nothing more than a contrast between a conventional battle and the "war on crime." While the remarks were hyperbolic, it was not error for the trial court to overrule the objection. Point of error one is overruled.

### POINT OF ERROR TWO

■ In his second point of error, appellant complains about the prosecutor's speculation during jury argument that, "maybe [he] paid [the proceeds of the robbery] to some lawyers." Appellant concedes that trial counsel failed to object to this portion of the argument, request an instruction to disregard, or move for mistrial; however, he maintains that the argument was so improper that even if an instruction to disregard had been requested and granted, the prejudicial effect of the argument would not have been removed.

The State responds that, in addition to appellant's failure to object to the statement at the time it was made, appellant opened the door to such remarks by testifying during cross-examination that he couldn't remember what he did with the money but might have used some of it to pay legal expenses associated with his child custody litigation. The State, in its brief, points to the following excerpt:

[PROSECUTOR]: What did you do with the money?

[APPELLANT]: I don't recall. A lot of it—I needed it for—for financial reasons, for financial problems that my wife had left me on the custody, the civil custody that I was going through.

[PROSECUTOR]: So you used it to pay for some things?

[APPELLANT]: For the child custody.

[PROSECUTOR]: What kind of things involved with the child custody?

[APPELLANT]: Legal, that—I have been through two or three attorneys. No one would work with me to help me and it is just—

[PROSECUTOR]: You used the money to pay a lawyer to help you in the child custody battle; is that what you are telling us?

[APPELLANT]: Anything that I could do to—to undo what....

[APPELLANT'S COUNSEL]: I will make a [Rule] 403 objection, Judge, at this point because I don't know what lawyer we are talking about.

THE COURT: Overruled.

[PROSECUTOR]: Mr. Zarate, at what point did you pay your child custody lawyer with this money that you had stolen from the grocery store?

[APPELLANT]: I don't recall.

[PROSECUTOR]: Well, was it within three days of this crime? Was it before you got arrested?

[APPELLANT]: I don't remember what happened to the money. I am being honest. I don't remember what happened to the money.

■ Although we do not condone the remark that "maybe [he] paid it to some lawyers," because it *could* be interpreted as an attempt to strike at appellant by and through his trial counsel, *see Boyde v. State*, 513 S.W.2d 588 (Tex.Crim.App.1974), it is equally true that appellant opened the door to such

remarks during his cross-examination. The State may question a defendant's version of the facts and draw logical inferences from the evidence adduced. *Veracruz v. State,* 713 S.W.2d 745, 748 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). We need not address whether such remarks are so egregious as to require reversal regardless of whether an objection is made at trial, because here, the comment was a logical inference from the evidence adduced. Appellant's second point of error is overruled.

## POINTS OF ERROR THREE AND FOUR

■ In his third point of error, appellant complains that the prosecutor's references to "average" robberies were improper jury argument because they were the personal opinions of the prosecutor and involved facts not in evidence before the jury. In his fourth point of error, appellant complains that references to discussions about crime and society on talk shows and radio shows also fell outside the categories of proper jury argument. He complains that each of these merits reversal under rule 81(b)(2) of the Texas Rules of Appellate Procedure.

Appellant highlights the following excerpt from the prosecutor's argument:

Take somewhere in the middle, okay? Maybe that is an average robbery. Maybe that is a robbery where a weapon is displayed but not used. Maybe that is a robbery where someone admits their guilt right away.

Appellant's counsel promptly objected, but the trial court overruled that objection.

Appellant maintains that the prosecutor was, in effect, telling the jurors that she knew where the facts of this particular case stood in relation to the "average" robbery and that the jurors should sentence accordingly. He notes that such an argument does not fit into any of the categories of proper jury argument and therefore requires reversal.

■ Although we agree that this line of argument does reflect the personal opinion of the prosecutor, and that appellant's objection should have been sustained initially,[1] rather than several minutes later in the argument, our task is not complete. Appellate review of error in criminal cases usually involves a two-step process. *Rose v. State,* 752 S.W.2d 529, 553 (Tex.Crim.App.1987) (op. on reh'g). In the first step we have determined that error occurred in the trial. In the second step, we must determine whether the error calls for reversal of the conviction, applying rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Harris v. State,* 790 S.W.2d 568, 584 (Tex.Crim.App.1989).

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Tex.R.App.P. 81(b)(2).

■ Our harmless error analysis must focus upon the error rather than the propriety of the outcome of the trial, trace its probable impact upon the jury, and determine whether it contributed to the conviction or punishment. *Harris,* 790 S.W.2d at 585–87. Review concentrates on the fairness of the trial and the integrity of the process. *Id.* We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Id.* at 587. This requires an evaluation of the entire record in a neutral, impartial and even-handed manner, not in the light most favorable to the prosecution. *Id.* at 586.

■ There is no formula by which we can perform a harmless error analysis, but generally we first isolate the error and its

---

1. After appellant's objection was overruled, the prosecutor then continued by telling the members of the jury that they had to "add some factors in this case." Appellant again objected, on the basis that the argument was based on the prosecutor's personal opinion. The trial court sustained that subsequent objection and instructed the jury to disregard the improper argument before denying appellant's motion for a mistrial.

effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 587–88. If we are unable to determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment, we must reverse the conviction. *Id.* at 584.

The jury returned a guilty verdict at the instruction of the trial court and impaneled to assess punishment. Our task, then, is to determine whether the error contributed to the punishment, rather than to the conviction. The source of the error was the prosecutor's closing argument, and the nature of the error was the injection of the attorney's personal opinion as to punishment. The prosecutor attempted to continue in the same line of argument after appellant's first objection was overruled, but once a similar objection, made to a similar statement, was sustained, the prosecutor abandoned that line of reasoning. Additionally, although the jury might have found it interesting to know what a prosecutor would think was appropriate punishment, or how serious a prosecutor would consider an offense of this type, the jury already had ample evidence to reject appellant's bid for probation.

By the time this error was made, the jury had already heard testimony from two employees of the grocery where the events transpired, including testimony from the man appellant shot at. The jury also heard that appellant had a prior arrest for aggravated assault with a deadly weapon and was arrested on two counts of interference with child custody despite his assertion during direct examination that he would be a good candidate for probation because he would not be a risk to anyone.

Although appellant attempted to convince the jury that he had since made amends with his former wife and worked out the difficulties stemming from the custody battle, the jury also learned that when appellant attempted to forcibly remove his children from day care, he threatened one of the day care workers with a gun.

The prosecutor, during closing arguments, told the jury the available range of punishment and the amount of time an inmate must serve before being considered eligible for probation. Although the prosecutor later told the jury that "a five-year probation is not applicable to the facts of this case" before referring to the "average" robbery, at no other point during her closing did she recommend a specific sentence. We conclude that the remark did not contribute to the jury's assessment of punishment and that punishment was based on the admissible evidence.

■■■ Our final *Harris* factor is whether the State would be likely to repeat such tactics with impunity, should the error be found harmless on this occasion. We have expressed concern in the past about attorneys who, in their zeal, skate too close to the line of acceptable argument, and we have been willing to reverse where there has emerged a pattern of improper argument followed by a perfunctory apology during trial. Accordingly, we will not hesitate to reverse in the future if we see such tactics emerging as the norm; however, in this instance, the error was harmless beyond a reasonable doubt. Point of error three is overruled.

■■■ As to appellant's fourth point of error, we disagree with his contention that the prosecutor's reference to discussions about crime and society on talk shows and radio shows constituted improper argument. The complained-of argument was as follows:

[PROSECUTOR]: Juries are the ones who say enough is enough. We have had enough. We are not going to let this kind of thing continue in our society. You know, you hear on talk shows and you hear on the radio, people say, "When is someone going to"—

[APPELLANT'S COUNSEL]: Objection as to radio talks and talk shows; outside the record.

THE COURT: Overruled.

. . . .

[PROSECUTOR]: When is someone going to put a stop to it?

Arguments which have referred to a community concern about crime and the measures taken to deter it have been held to constitute proper pleas for law enforcement.

*See generally, Minafee v. State,* 482 S.W.2d 273 (Tex.Crim.App.1972); *Smith v. State,* 846 S.W.2d 515 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Huff v. State,* 660 S.W.2d 635 (Tex.App.—Corpus Christi 1983, pet. ref'd). We find the argument a proper plea for law enforcement; thus, point of error four is overruled.

## POINT OF ERROR FIVE

In his final point of error, appellant complains the trial court erred in permitting the State to introduce irrelevant and prejudicial testimony concerning appellant's prior arrests for the offenses of interference with child custody and aggravated assault. Appellant disputes the State's contention that he invited the admission of extraneous offense evidence during his direct examination.

Appellant testified that he was jailed for four to six months after being arrested for the instant offense and said that the time spent incarcerated was beneficial. Specifically, he told the jury that he had stopped drinking and ended "the roller coaster" lifestyle. Appellant also said he learned from other inmates the techniques used to elude police and put what he learned to use when he became a bounty hunter after posting bond and being released. He then told the jury:

> I apprehended an individual, without a weapon, because I cannot carry a weapon, I cannot afford another incident or charge. So I picked up an individual named Hector Agulla who had two murder warrants, who happened to tie these two people behind their back and blindfolded them and shot them in the head. I worked on it for six months and happened to catch him in Dallas.

Appellant then made a plea for probation by stating the following:

> I know I can't change what I have done. It is impossible. But I have worked very hard for four years. I never got into a bit of trouble. I've apprehended people without a weapon. I have picked up a lot of people to get them off society where they wouldn't harm any people like I happened to do that one event. That wasn't me at the time that that happened. Look back at it, I still can't believe that it happened.
>
> I just want you to at least consider probation. I'm not at risk to anybody. All I have done to society is help them so far. And I would like to continue to help them.

After appellant's direct examination, the trial court held a hearing outside the presence of the jury to determine whether the testimony opened the door to the prosecutor's use of specific prior acts of misconduct for impeachment. The trial court ruled that evidence of the other offenses would be admissible if offered during cross-examination.

Appellant asserts that the State relied on two theories of admissibility to introduce the other offenses: (1) because the defendant testified to prior acts of good conduct, the prosecutor argued that she should be allowed to introduce prior acts of bad conduct; and (2) because the prosecutor heard appellant testify that he "never got into a bit of trouble," the prosecutor argued that she should be able to correct the false impression left with the jury.

Appellant maintains that the fact he had been arrested for prior offenses did not constitute proof of any bad acts and relies on *Jessup v. State,* 853 S.W.2d 141 (Tex.App.—Fort Worth 1993, pet. ref'd) for this proposition. Mere arrest, he argues, does not rebut a challenge to the credibility of other evidence of good acts.

Appellant also contests the notion that the evidence was necessary to correct a false impression left with the jury that appellant had never been in trouble with the law before. Appellant says additional direct examination after the trial court's hearing on the admissibility of the extraneous offenses, but before the State began cross-examination, revealed that appellant was telling the jury that he had not been in trouble during the four-year interval beginning with his posting bond in connection with the aggravated robbery arrest in the instant case and concluding with the 1994 trial on the robbery charge.

The State responds that appellant's arrests were probative on the issue of his suitability for probation and that the issue was raised by appellant when he testified that, if grant-

ed probation, he wouldn't be "any trouble." The State claims that an accused who initiates evidence that he can comply with the law if placed on probation has placed his suitability for probation in issue and that in doing so, he has "opened the door" to rebuttal evidence which may include proof of specific bad acts. The State relies on *Murphy v. State,* 777 S.W.2d 44, 67 (Tex.Crim.App. 1988) (op. on reh'g) for this premise.

Regardless of whether appellant meant that he had not gotten into any trouble between bonding out on the instant offense and trial on that same charge or whether he wished to convey the impression that he had *never* been in any trouble with the law *other than* his arrest on the aggravated robbery charge, it is clear that appellant referred to the incident at the grocery as "that one event." We find that appellant's testimony placed his suitability for probation into issue. *See King v. State,* 773 S.W.2d 302, 304 (Tex.Crim.App.1989). Additionally, we agree with the State's contention that, whether the evidence may or may not have been admissible to rebut "appellant's admittedly ambiguous statement," it was admissible as to the issue of whether he was suitable for probation under *Griffin v. State,* 787 S.W.2d 63 (Tex.Crim.App.1990). Appellant's final point of error is overruled.

The judgment of the trial court is affirmed.