**Felipe HERNANDEZ, Appellant,**

**v.**

**The STATE of Texas, State.**

**Nos. 2–01–479–CR, 2–01–480–CR.**

Court of Appeals of Texas,
Fort Worth.

June 19, 2003.

Scott Brown, Fort Worth, for appellant.

Tim Curry, District Attorney, Charles M. Mallin, Chief, Appellate Section, Edward L. Wilkinson, Camille Sparks, Lisa Callaghan, Assistant District Attorneys of Tarrant County, Fort Worth, for appellee.

PANEL A: DAY, DAUPHINOT, and HOLMAN, JJ.

## OPINION

SAM J. DAY, Justice.

Appellant appeals his two convictions for aggravated robbery and his conviction for engaging in organized criminal activity, raising four points. Appellant claims that

the trial court erred: 1) by denying Appellant's motion for mistrial based on the prosecutor's improper jury argument in the guilt/innocence phase of the trial that was a comment on Appellant's failure to testify; 2) by allowing the prosecutor's improper jury argument in the punishment phase of the trial that was a comment on Appellant's failure to testify; 3) by allowing the prosecutor to call Appellant a terrorist during jury argument in the punishment phase of the trial; and 4) by allowing testimony of oral statements obtained in violation of article 38.22 of the Texas Code of Criminal Procedure. We affirm the trial court's judgment.

## FACTS

On the evening of November 12, 2000 Appellant robbed Francisco Gonzalez at gun point at a local carwash. During the robbery, Appellant questioned Gonzalez as to whether he was a member of a gang. When Gonzalez denied all gang affiliation, Appellant flashed signs of the Sur Trece gang and drove off in Gonzalez's car. After Appellant left the scene, he had an accident in the stolen car. A witness to the accident stated that as Appellant got out of the car he raised his shirt and reached for an unidentified object that the witness feared was a gun. One of the people riding in the same car as Appellant pulled him away from the scene before anything further occurred.

Four days later, on November 16, Appellant went back to the car wash where he stole the first car. He came up to Cesar Mapula who was washing his car. Appellant asked Cesar Mapula what time it was. After Mapula answered Appellant's question, Appellant pulled a gun on Mapula. During the robbery, Appellant shot Mapula and then stole his car. A police officer heard the report on the rob-

bery and managed to catch Appellant while he was attempting to escape.

During the trial, the State offered evidence to show that Appellant was a member of the Sur Trece gang. Testimony showed that Appellant was assuming a leadership role in the Sur Trece gang and had acquired tattoos that showed his higher rank. The State charged Appellant with aggravated robbery of Francisco Gonzalez. Appellant was also charged with attempted capital murder and aggravated robbery of, and engaging in organized criminal activity against, Cesar Mapula. The State dropped the attempted capital murder charge before trial began. Appellant was tried to a jury who found him guilty on all counts. The jury then sentenced him to 30 years' confinement.

## JURY ARGUMENTS

In Appellant's first three points on appeal, he claims that the prosecution made improper jury arguments during trial. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection cannot be reversible error unless, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury's verdict. Tex.R.App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex.Crim. App.2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on

reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court erred in denying the mistrial. *Faulkner v. State,* 940 S.W.2d 308, 312 (Tex.App.-Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). Its resolution depends on whether the court's instruction to disregard cured any prejudicial effect. *Id.* Generally, an instruction to disregard impermissible argument cures the prejudicial effect, if any. *Id.; Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.), *cert. denied,* 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). In assessing the curative effect of the court's instruction to disregard, the correct inquiry is whether the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect. *Faulkner,* 940 S.W.2d at 312. If the instruction cured any harm caused by the improper argument, a reviewing court should find that the trial court did not err. *Dinkins,* 894 S.W.2d at 357; *Faulkner,* 940 S.W.2d at 312. Only if the reviewing court determines the instruction was ineffective does the court go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury's verdict. Tex. R.App. P. 44.2(b).

Appellant argues in his first point that the trial court erred in refusing to grant a mistrial when the prosecution improperly commented on Appellant's right not to testify in the guilt/innocence stage of the trial. The comment occurred when the prosecution responded to Appellant's argument that no proof existed to show that Appellant used a real gun in the first robbery. Appellant attempted to convince the jury that the testimony showed only that Appellant carried what looked to be a gun in the first robbery. Appellant argued that without proof that he carried an actual gun, the jury should have found him not guilty under that charge. The prosecution responded to this argument by stating:

> How are we going to be able to solve crimes? Are we ever going to be able to charge somebody with aggravated robbery if we don't have the weapon? That's absolutely ludicrous.
>
> Certainly this man intended that he use a deadly weapon. He wanted to threaten him with it. You also know—

At this point, Appellant objected claiming that the argument was an improper comment on his right not to testify. The trial court sustained the objection and gave the jury an instruction to disregard. The prosecution then stated:

> You can infer intent from the actions surrounding the actual incident. You look to all of the actions to decide what happened out there. And you will recall that ... Gonzalez, told you that he saw a weapon, he was scared of that weapon, he thought it was a gun. And guess what: He describes it to you and Jeannette describes it to you. Francisco Gonzalez tells you that it's a black gun, it's about the size of a hand, and Jeannette Rosales says the same thing.

The prosecution's comments show that the complained-of comment was not an attempt by the prosecution to comment on Appellant's failure to testify. Instead, the prosecution was attempting to show that Appellant intended to use a gun and he intended to rob Gonzalez. *See Wolfe v. State,* 917 S.W.2d 270, 275 (Tex.Crim.App. 1996) (holding that intent may be inferred

from circumstantial evidence); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995) ("Intent can be inferred from the acts, words, and conduct of the accused.") The prosecution did not comment on Appellant's choice not to testify by arguing that circumstantial evidence offered at trial showed Appellant's intent to use a gun to rob his victims.

The State argued that Appellant intended to use a gun to rob his victims in response to an argument of opposing counsel. *See Canales v. State*, 98 S.W.3d 690, 695 (Tex.Crim.App.2003) (holding that responding to opposing counsel's argument is a permissible area of jury argument); *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000) (holding that a permissible area for jury argument is an "answer to argument of opposing counsel"). We hold that the State's argument did not fall outside of the permitted areas of jury argument. *See Felder*, 848 S.W.2d at 94–95. We overrule Appellant's first point on appeal.

■ In Appellant's second point, he claims that the prosecution again commented on his right not to testify at trial. Appellant claims that during the punishment stage of trial, the prosecution stated:

> How cold a mind does it take to feel so little sympathy, so pity—so little empathy for another human being? What kind of mind feels that?

> But he did not see—from the evidence and from the facts that you know, he did not see Cesar Mapula as a human being. He saw him as some work that he could put in.

At this point, Appellant objected, and the trial court overruled that objection. Appellant alleges that the above comment infers evidence of Appellant's intent which could only come from Appellant and, therefore, the comment was an indirect comment on Appellant's choice not to testify.

In the present case, testimony at trial showed that Appellant was a member of a gang. The State offered evidence to show that a member of a gang moved into leadership when they "put in work." To put in work meant that the member of the gang had to commit crimes. As the member of the gang advanced through the gang's hierarchy, he had to commit increasingly more violent crimes. Testimony at trial shows that Appellant was advancing through the ranks of the Sur Trece gang. Further, the testimony showed that Appellant's failed robbery attempt against Gonzalez would cause Appellant embarrassment and would motivate him to commit another violent crime quickly to save face.

This evidence introduced at trial provided circumstantial evidence of Appellant's intent to commit violent crimes. Again, the prosecution can argue that circumstantial evidence offered at trial shows Appellant's intent. *See Patrick*, 906 S.W.2d at 487. The prosecution was not commenting on Appellant's choice not to testify. The State could summarize this evidence during closing argument and show that Appellant's motivation in the robbery was to move up in the leadership rankings of his gang. Evidence of Appellant's motivation for a violent crime was before the jury during the trial, and the prosecution could summarize it during the punishment stage of the trial to show why Appellant should not receive probation and instead should receive a long prison sentence. The State, therefore, did not violate Appellant's rights by attempting to summarize this evidence to the jury. *Id.* We overrule Appellant's second point on appeal.

■ In Appellant's third point on appeal, he complains of another jury argument used by the prosecution in this case. During the punishment phase of the trial,

the prosecutor stated that "[i]t doesn't matter who they make their victim because it could be anyone. Anyone will give them more prestige, more power within their gang. Does this sound like anyone to you? Does this sound familiar? What other group does this sound like? Doesn't it sound like terrorists?" At this point, Appellant objected stating that the comment improperly equated him with Osama Bin Laden or other terrorists in the minds of the jury, and that due to the proximity in time with the September 11 attacks, the comment had an extremely prejudicial effect. The State argued to the judge at the bench that "committing an act of terror for the purpose of gaining power and prestige is exactly like being a terrorist." The court overruled the objection and permitted the argument.

The evidence at trial showed that Appellant's motivation in robbing Gonzalez and Mapula and shooting Mapula was to advance through the leadership hierarchy of his gang. The more violent the crime, the more prestige Appellant received and the higher he advanced in the gang. Webster's Dictionary defines terrorism as "the act of terrorizing; use of force or threats to demoralize, intimidate, and subjugate." WEBSTER'S NEW WORLD DICTIONARY 1469 (2nd College ed.1986). In this case, Appellant used force and threat of force to intimidate his victims. We hold that the prosecutor was merely summarizing the evidence against Appellant, and did not violate Appellant's rights. *Felder*, 848 S.W.2d at 94–95. We overrule Appellant's third point on appeal.

## ARTICLE 38.22 STATEMENTS

In Appellant's fourth point on appeal, he claims that the trial court erred in allowing the testimony of oral statements obtained in violation of article 38.22 of the code of criminal procedure. The complained-of testimony came from Corporal Clay Hendrix of the Fort Worth Police Department. Hendrix testified that on numerous occasions he had contact with Appellant. Hendrix specifically testified that he arrested Appellant on April 11, 2000 and on June 7, 2000.

On April 11, 2000, after Hendrix arrested Appellant and before Hendrix read Appellant his rights, Hendrix questioned Appellant over his gang affiliation. Appellant responded to Hendrix's questions stating that he belonged to a gang called Sur Trece. While Hendrix questioned Appellant, he observed that Appellant had gang tattoos on his body.

On June 7, 2000, Hendrix arrested Appellant again. Hendrix stated that he could not remember whether he questioned Appellant before or after he arrested him, but that Appellant claimed he no longer belonged to Sur Trece. Hendrix testified that he doubted the truth of this statement because of Appellant's appearance. Hendrix observed new tattoos on Appellant, that Appellant had a hat with Sur Trece written on the bill, and that Appellant was wearing the gang colors of Sur Trece. Hendrix claimed that during both interviews, he intended to use the answers to the questions for information purposes only, and he did not question Appellant in hopes of incriminating him.

Article 38.22, section 3 of the Texas Code of Criminal Procedure dictates that: "(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1) (Vernon Supp.2003).

In the present case, the evidence shows that at least one of Appellant's non-record-

ed oral statements resulted from custodial interrogation. Hendrix testified that he had placed Appellant under arrest on April 11, 2000. After Appellant was placed under arrest, Hendrix questioned him over his gang affiliation. The conversation was not recorded. The trial court, therefore, committed error by admitting the oral statement over Appellant's objection. *Id.*

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of Appellant's convictions. TEX.R.APP. P. 44.2. "[A]rticle 38.22's recording requirement for an oral statement is a procedural evidentiary rule rather than a substantive exclusionary rule." *Davidson v. State,* 42 S.W.3d 165, 167 (Tex.App.-Fort Worth 2001, pet. ref'd). Thus, we apply rule 44.2(b) of the Texas Rules of Appellate Procedure and disregard the error if it does not affect Appellant's substantial rights. TEX.R.APP. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim. App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd) (en banc). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Accordingly, we review the record as a whole to make this determination. *Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. at 1248.

In the present case, article 38.22 only affects Appellant's oral statements. *See Holberg v. State,* 38 S.W.3d 137, 141 (Tex. Crim.App.2000) ("Article 38.22, § 3(a), applies only to oral statements made during custodial interrogation."). Hendrix's testimony regarding Appellant's tattoos and Appellant's manner of dress resulted from Hendrix's personal observation and are not subject to exclusion under 38.22. The trial court did not err in allowing Hendrix to testify over them. *Id.*

The record shows that Hendrix's testimony regarding Appellant's statements was cumulative in this case. The evidence shows that when Appellant robbed Gonzalez, Appellant told him that he was a member of the Sur Trece gang. Gonzalez testified to the fact that Appellant admitted to him that Appellant belonged to Sur Trece. Hendrix's testimony was cumulative of this evidence which was properly admitted. Because the improper evidence was cumulative, the error in admitting it was harmless. *See Franks v. State,* 90 S.W.3d 771, 805–06 (Tex.App.-Fort Worth 2002, no pet.) (holding that because the complained-of testimony was generally cumulative of other evidence introduced in the case, no harm attached); *Johnson v. State,* 977 S.W.2d 725, 728 (Tex.App.-Fort Worth 1998, pet. ref'd) (holding that error is not reversible if cumulative evidence is admitted at trial without objection); *Mack v. State,* 928 S.W.2d 219, 225 (Tex.App.-Austin 1996, pet. ref'd) (holding error is not reversible "if other evidence at trial is admitted without objection and it proves the same fact or facts that the inadmissible evidence sought to prove"). We overrule Appellant's fourth point on appeal.

## CONCLUSION

Having overruled all of Appellant's points, we affirm Appellant's conviction.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I respectfully dissent from the majority's characterization of the prosecutor's argument as "merely summarizing the evi-

dence against appellant" when she compared Appellant to a terrorist about two months after September 11, 2001.

Before September 11, we could honestly say that a reference to a terrorist was simply a reference to a person who met the dictionary definition. After September 11, however, the term took on a new and specific meaning.[1] This court should candidly admit that, regardless of the intent behind the prosecutor's comments, the effect was to equate Appellant with the authors of the September 11 stealth attacks on the United States. We should then directly analyze whether allowing the argument constituted error and, if so, harm. In sidestepping the real issue, the majority opinion fails to fully address Appellant's clearly stated concerns and misses the opportunity to provide guidance to the bench and bar.

1. *See Zarate v. State,* 908 S.W.2d 544, 547–48 (Tex.App.-Fort Worth 1995, pet. ref'd) (discussing cases analyzing whether references to current events constitute proper jury argument and concluding that "any comparison to current events must be evaluated in the context of the times").