

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00082-CR

| | | |
|---|---|---|
| Eddie Calvin Dorris, II | § | From the 396th District Court |
| | § | of Tarrant County (1200819D) |
| v. | § | March 7, 2013 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00082-CR

EDDIE CALVIN DORRIS, II                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

### MEMORANDUM OPINION[1]

----------

Appellant Eddie Calvin Dorris, II appeals his conviction for aggravated assault with a deadly weapon.[2] In one point, he contends that the trial court erred by overruling his objection to part of the State's closing argument. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).

**Background Facts**

Appellant was Rhonda's[3] boyfriend. He was physically abusive with her on several occasions. One evening in May 2010, he drove her to a secluded area, offered her some drugs, and indicated that he wanted to have sex with her in his truck. Rhonda told appellant that she wanted to go home, but he called her his "field whore," and they had sex without her consent. Rhonda told appellant that she needed to use the restroom, and when he let her out of his truck, she tried to run away. He caught up to her, dragged her across a road, hit her, kicked her in the ribs, stomped on her, and "pound[ed] [her] in the face." Appellant abused Rhonda for hours. He told her more than once that she was going to die. Eventually, appellant returned to his home with blood on his hands and told Kady, who was staying there, that he had hurt Rhonda badly.

A driver saw Rhonda walking on a highway and noticed that she had severe injuries and was crying and panicking. Rhonda told the driver that her boyfriend had beaten and raped her. The driver called 911. An officer went to the scene and noticed that Rhonda was covered in blood, had severe cuts, and was wearing nothing except a pair of shorts. An ambulance took Rhonda to a hospital, where medical personnel determined that she had broken ribs, a slightly collapsed lung, a broken nose, and significant bruising over all of her body.

---

[3]To protect the victim's anonymity, we will use only the first names of the people associated with appellant's acts. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Rhonda stayed in the hospital for a few days, where she had a tube in her chest to heal her lung and received medicine to lessen her pain.

A grand jury indicted appellant with, among other charges, aggravated assault with a deadly weapon. Appellant pled not guilty. After listening to the evidence and the arguments of the parties, a jury convicted appellant of aggravated assault with a deadly weapon. The trial court heard brief evidence concerning appellant's punishment and sentenced him to twenty years' confinement. Appellant brought this appeal.

## The Propriety of the State's Closing Argument

In his only point, appellant argues that the trial court erred by overruling his objection to part of the State's closing argument on his guilt, in which the following exchange occurred:

> [THE STATE]: [Defense counsel] says there was no specific intent to kill [Rhonda].[4] Well, if there's no specific intent to kill [Rhonda], this man, when he drug her across the highway and was beating her, did he stop right there? No, he didn't. Because you know what he did? He started kicking her. And he kicked her so much her ribs cracked and she had a collapsed lung. There's your specific intent.
>
> If there was no specific intent to kill her, there was no reason for her to go to the hospital. They say he doesn't have intent to kill her. Oh, my gosh, did you go see -- did you go to the hospital for

---

[4]Along with aggravated assault with a deadly weapon, the grand jury also indicted appellant with attempted capital murder (which requires a specific intent to commit murder), but the jury acquitted appellant of that charge. *See* Tex. Penal Code Ann. § 15.01(a) (West 2011), § 19.03(a)(2) (West Supp. 2012). Before the State's quoted argument, appellant's counsel had argued that appellant did not specifically intend to kill Rhonda.

4

her? Did you call paramedics? Did you seek medical attention? No, he didn't.

[DEFENSE COUNSEL]: Objection, Your Honor. He's asking my client questions, motioning towards him. It's a comment on my client's failure to testify.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Thank you.

[THE STATE]: Did he seek medical attention? No, he didn't. Because he was trying to kill her.

They say he wasn't trying to kill her. Well, oh, my gosh, was he so concerned that he went to the police? No. He went to work that day. That's how concerned he was.

After the jury convicted him of aggravated assault with a deadly weapon, appellant filed a motion for new trial in which he contended that the State had violated his "Constitutional right not to testify" by making the argument quoted above. On appeal, appellant argues that the part of the State's closing argument in which the prosecutor asked rhetorical questions to him violated his federal and state constitutional rights and also violated section 38.08 of the code of criminal procedure. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005) ("Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.").[5] Appellant contends that

---

[5]Appellant does not separately brief his constitutional and statutory arguments or argue that different standards should apply to each alleged violation of his rights.

5

the State's rhetorical questions to him commented on his decision to not testify because the questions were about issues that could be established only through his testimony.

The purpose of closing argument is to "facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence." *Faulkner v. State*, 940 S.W.2d 308, 311 (Tex. App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). To be permissible, the State's closing argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Rhetorical questions are generally within the scope of jury argument as long as they reasonably relate to the evidence. *See Wolfe v. State*, 917 S.W.2d 270, 280 (Tex. Crim. App. 1996).

The State cannot "comment on the failure of an accused to testify. Such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10, of the Texas Constitution." *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001) (footnote omitted). To violate the defendant's right against compelled self-incrimination, however, the

6

offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.

*Id.* at 765 (footnotes omitted); *Hill v. State*, 303 S.W.3d 863, 877–78 (Tex. App.— Fort Worth 2009, pet. ref'd) (applying the *Bustamante* standard and overruling an appellant's argument because it was unclear whether the prosecutor's comment referred to the appellant's decision to not testify); *White v. State*, 201 S.W.3d 233, 244 (Tex. App.—Fort Worth 2006, pet. ref'd) (overruling an appellant's argument because there was "no clear implication that the [prosecutor's] comment referred to [the appellant's] failure to testify").

Before the parties began their closing arguments, the jury had received evidence from Rhonda that after appellant left her alone in a field, he did not return to try to help her or to take her to a hospital. Kady testified that appellant came home at approximately 1:30 a.m. after beating Rhonda. According to Kady, appellant told her that he had beaten and choked Rhonda, that he had "left her by a tree," and that she "wasn't going anywhere" because he had "hit her so many times in the face that . . . she wouldn't be able to see where she was going." Kady testified that appellant gathered water and towels so that he could find Rhonda and "clean her up" before he brought her back to the house. Appellant told Kady to not call the police, and he said that Rhonda was "lucky

that he didn't have a shovel." Kady testified that appellant eventually left with another man who was living in the house to look for Rhonda.

Based on this context within the record, we conclude that the complained-of argument, through the rhetorical questioning of appellant, permissibly summarized evidence that the jury had heard from Rhonda and Kady about appellant's actions, or lack thereof, on the date of the offense, including his failure to seek medical attention for Rhonda or to take her to the hospital. *See Felder*, 848 S.W.2d at 94 (stating that parties may summarize evidence in closing arguments); *Marchbanks v. State*, 341 S.W.3d 559, 564–65 (Tex. App.—Fort Worth 2011, no pet.) (same); *see also Goff v. State*, 931 S.W.2d 537, 548 (Tex. Crim. App. 1996) ("Where the statement does not refer to evidence which can only come from the defendant, then it is not a direct comment on a defendant's failure to testify."), *cert. denied*, 520 U.S. 1171 (1997); *Hernandez v. State*, 114 S.W.3d 58, 62–63 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that a prosecutor's argument that emphasized evidence in the record that related to a defendant's intent was not a comment on the defendant's decision against testifying). The argument did not expressly or implicitly refer to what appellant said, or did not say, regarding his crime on the day of the offense or at trial. Also, the rhetorical questions asked by the prosecutor to appellant during the argument referred only to his actions on the date of the offense, not to his state of mind on the date of trial. *Cf. Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011) (holding that during closing argument, a prosecutor's rhetorical question to a

defendant about evidence in the record was permissible, but questions about the defendant's state of mind on the day of trial were impermissible because they could be answered only through the defendant's testimony). Finally, contrary to appellant's argument in his brief, the complained-of argument did not question why appellant failed to seek medical attention for Rhonda but merely highlighted evidence in the record that he did not do so.

For these reasons, we hold that the complained-of argument was not manifestly intended to refer to appellant's decision to not testify and that a jury would not have "necessarily and naturally" taken the argument as a comment on his failure to testify. *See Bustamante*, 48 S.W.3d at 765. Thus, we overrule appellant's contention in his only point that the argument violated his constitutional or statutory rights. *See Hill*, 303 S.W.3d at 877–78.

## Conclusion

Having overruled appellant's only point, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 7, 2013