**Daniel Joseph LUKEN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 158–88.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 22, 1989.

Randy R. Holzapple, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron and Carol Davies, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S AND
STATE'S PETITIONS FOR
DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of burglary of a habitation with the specific intent to commit sexual assault. V.T.C.A. Penal Code, § 30.02(a)(1). Pursuant to a special issue submitted at the guilt/innocence stage of trial, the jury found appellant used or exhibited a deadly weapon in the course of committing the offense. Article 42.12, § 3g, V.A.C.C.P. Finding an enhancement paragraph "true," the jury assessed punishment at 75 years in the Texas Department of Corrections.

While affirming the conviction, the First Court of Appeals in Houston reformed the judgment to delete the affirmative finding of use or exhibition of a deadly weapon. *Luken v. State*, 744 S.W.2d 274 (Tex.App.—Houston [1st] 1987). In grudging reliance upon this Court's decision in *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr. App.1987), the court of appeals held that because the State failed to allege use or exhibition of a deadly weapon either in the indictment or by way of a special pleading, the affirmative finding must be struck, even though, in the eyes of that court, "the facts indicate that appellant was neither surprised nor harmed." *Id.*, at 276.

We granted petitions for discretionary review from both the State and the appellant in this cause. The State's petition represents an onslaught upon our holding in *Ex parte Patterson*, supra. Many of the arguments made have already been answered to our satisfaction in *Patterson* itself, and we will not revisit them here. However, the State raises two contentions

we believe should be addressed. First, the State asserts the court of appeals erred to hold, in effect, that some form of written pleading is required to support an affirmative finding. This holding appears to conflict with that in *Kirkpatrick v. State*, 747 S.W.2d 521 (Tex.App.—Ft. Worth 1988). Second, the State maintains appellant's attack upon the affirmative finding is foreclosed by his failure to object to lack of notice before his trial commenced, under Article 1.14(b), V.A.C.C.P. See Acts 1985, 69th Leg., ch. 577, p. 2196, § 1, eff. Dec. 1, 1985. For his part, appellant complains that the court of appeals should have reversed his conviction and remanded the cause for new trial. Submission of the special issue at the conclusion of the guilt/innocence stage, he argues, amounted to an "inferential comment on the weight of the evidence that might encourage a finding of guilt." Appellant cites this same court of appeals' opinion in *Davis v. State*, 684 S.W.2d 201 (Tex.App.—Houston [1st] 1984). We granted both petitions pursuant to Tex.R.App.Pro., Rule 200(c)(1) & (2).

## I.

■ The indictment in this cause alleged appellant:

"with intent to commit sexual assault, enter[ed] a habitation owned by Susan Annette Franz, a person having a greater right to possession of the habitation than [appellant] and hereafter styled the Complainant, without the effective consent of the Complainant, namely, without any consent of any kind."

No mention of an implement appears at all, much less of one that is a deadly weapon *per se*, or is expressly alleged to be a deadly weapon. *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.1985) Moreover, because it is not alleged either death or serious bodily injury was caused, the indictment does not "necessarily include" an allegation that anything was used that "in the manner of its use ... [was] capable of causing death or serious bodily injury." V.T.C.A. Penal Code, § 1.07(a)(11)(B). Thus, the holdings in *Ex parte Beck*, 769 S.W.2d 525

(Tex.Cr.App.1989), and its progeny, are not implicated. See *Eason v. State*, 768 S.W.2d 312 (Tex.Cr.App.1989); *Ex parte Brown*, 773 S.W.2d 332 (Tex.Cr.App.1989). Neither indictment nor any special plea contains an allegation of use or exhibition of a deadly weapon.

In *Ex parte Patterson*, supra, we held an accused is "entitled to notice that the State [will] pursue an affirmative finding as authorized by Article 42.12, § 3g(a)(2), supra." 740 S.W.2d at 775. In a footnote we remarked that the notice of which we spoke was not of that variety we have "found ... to emanate from the mandate of Article I, § 10, that 'no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury,' which shall specify 'the nature and cause of the accusation against him[.]' See *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980) (Opinion on State's motion for rehearing)." *Id.*, at 774–75, n. 7. The notice held necessary in *Patterson* is not simply that which fleshes out an indictment which is minimally adequate to invoke the jurisdiction of the trial court, but otherwise insufficient to support a plea in bar, Article 21.04, V.A.C.C.P., or to inform the accused of precisely what he is charged with so that he may prepare his defense, see Articles 21.02(7) and 21.11, V.A.C.C.P. At issue in *Patterson*, rather, is that notice mandated by due course of law sufficient to alert the accused in the first instance "that a particular finding of fact, having an incrementally greater impact upon his liberty than a bare conviction, may even be made." 740 S.W.2d at 774. While concluding that, unlike enhancement paragraphs, an allegation of use or exhibition of a deadly weapon need not appear *in the indictment*, we expressly held "that the State must plead it." *Id.*, at 776. Today we hold that, just as an enhanced sentence must be supported by written allegations of a prior conviction or convictions, an affirmative finding of use or exhibition of a deadly weapon must be supported by a written pleading, albeit not necessarily in the indictment.[1] Proof alone will not sup-

---

1. We in no wise retreat from our holdings in *Ex*    *parte Beck, Eason v. State,* and *Ex parte Brown,*

port such a finding, for evidence alone gives the accused "no prior indication that the nature of a weapon used was to be a particular issue in the case, with additional consequences vis-a-vis his liberty." *Id.*, at 777, & n. 13.

## II.

■ The instant indictment was filed on March 5, 1986, after the effective date of the 1985 addition of Article 1.14(b), supra.[2] The State maintains appellant forfeited his right to complain of the lack of a deadly weapon allegation by failing to object to the defect "before the date on which the trial on the merits commences[.]" *Id.* We disagree.[3]

■ Contemporaneously with the amendment to Article 1.14, supra, Article V, § 12 of the Texas Constitution was changed to provide, *inter alia*, that "presentment of an indictment or information to a court invests the court with jurisdiction of the cause." See S.J.R. No. 16, 69th Leg., p. 3361, Regular Session, 1985. The same amendment defined "indictment" as a constitutional matter to be "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." Whether an indictment insufficient to charge an offense under prior caselaw will be deemed an "indictment" sufficient to invest a trial court with jurisdiction merely by virtue of its presentment under these provisions is a question as yet unaddressed by this Court. See generally, Dix, Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need

for Reform, 38 Baylor L.Rev. 1 (1986). Compare *Shaw v. State*, 728 S.W.2d 889 (Tex.App.—Houston [1st] 1987), with *Milam v. State*, 742 S.W.2d 810 (Tex.App.—Dallas 1988). At any rate, there can be no question the indictment in this cause was sufficient to allege an offense, and therefore to invest the trial court with jurisdiction over the cause.

Presumably to the extent an indictment is deficient in what prior caselaw considered "substance," and certainly inasmuch as it falls short as a matter of "form," see *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Cr. App.1974), failure by the accused to raise any deficiency prior to trial will waive error on appeal under Article 1.14(b), supra. See *Dix*, supra. At issue here, however, is neither sufficiency of the indictment to allege an offense, nor adequacy of the "notice" to support a plea in bar or inform the accused of the precise nature of his conduct so that he may prepare his defense. *Ex parte Patterson*, supra, at 774–75, n. 7. Rather, the notice of which we spoke in *Patterson*, supra, "is that firmly rooted in fundamental precepts of due process and due course of law—the right to be informed, at a bare minimum, that a particular proceeding (over and above the determination of guilt/innocence and sentence) will occur which may operate to further diminish that accused's liberty interest." *Id.* Indeed, because we identified the source of the notice required in *Patterson*, supra, in the due course of law provision of Article I, § 19 of the Texas Constitution, rather than in Article I, § 10, we held the pleading

all supra. In those causes the Court held the indictments *did* include sufficient pleadings to support affirmative findings.

2. This provision reads, in relevant part:
"(b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."

3. The court of appeals originally resolved appellant's contentions under *Adams v. State*, 707 S.W.2d 900 (Tex.Cr.App.1986), finding lack of notice an affirmative finding would be sought

was harmless. Appellant filed a petition for discretionary review pointing out the court of appeals failed to note this Court's opinion in *Ex parte Patterson*, supra. Pursuant to Tex.R.App. Pro., Rule 101, the court of appeals reconsidered its earlier opinion, withdrew it, and issued the opinion which now appears at 744 S.W.2d 274. The State was given no opportunity to present its Article 1.14(b) argument to the court of appeals in the first instance. Although we do not ordinarily review an issue not raised in the court of appeals, see *Tallant v. State*, 742 S.W.2d 292 (Tex.Cr.App.1987), under these limited circumstances we will review the State's contention on petition for discretionary review.

necessary to support an affirmative finding did not necessarily have to appear in the indictment. 740 S.W.2d at 776. Nevertheless, clearly "the State must plead it" in order to tender the issue. *Id.*, at 776, 777.

Plainly put, an indictment sufficient to allege an offense, but containing no allegation of use or exhibition of a deadly weapon, suffers no "defect, error, or irregularity of form or substance" on that account. Article 1.14(b), supra. It would be unconscionable to require an accused to complain that the State has failed by its pleadings to present an issue on some fact beyond what is necessary to "charg[e] a person with the commission of an offense," Article V, § 12, supra, which additional fact may further adversely impact his own liberty interest. Under these circumstances an accused cannot even know to object "until the special issue ... has been submitted to the jury, or the trial court, acting as factfinder ... enters an affirmative finding in the judgment[.]" *Ex parte Patterson*, supra, at 774.

It may be helpful to analogize once again to submission of enhancement paragraphs at the punishment stage of trial. The Court has said that proof of unpled prior convictions will not support an enhanced sentence. See *Moore v. State*, 154 Tex. Cr.R. 307, 227 S.W.2d 219 (1950); *Ex parte Patterson*, supra, at 776. Even after enactment of Article 1.14(b), supra, we would not hold that a trial court is authorized to find, or to submit the question to the jury whether an accused has been formerly convicted for purposes of enhancement of punishment under Chapter 12 of the Penal Code, on the theory that the accused failed to object that the indictment did not include enhancement allegations. Again, there is no "defect, error, or irregularity" in an indictment containing no enhancement paragraph. It simply fails to place the accused's status as a recidivist in issue. Surely in an accusatory system of criminal justice we cannot require, consonant with due course of law, that the accused complain he faces too lenient a range of punish-

ment! We similarly decline to hold that under Article 1.14(b), supra, an accused must object before trial to the failure of the State's pleadings to allege use or exhibition of a deadly weapon in order to preserve any challenge to submission of that issue to the factfinder.

## III.

■ The trial court submitted the special issue regarding use or exhibition of a deadly weapon to the jury in the charge at the conclusion of the guilt/innocence stage of trial. Although appellant objected to submission of the special issue on notice grounds, he failed specifically to object that, if given at all, the charge should be submitted only at the punishment phase of trial. He now argues submission of the issue at the guilt stage constituted a comment on the weight of the evidence of sufficient magnitude as to merit a new trial.[4]

We have observed that "[a]n affirmative finding can be and is perhaps more suited to be a punishment issue." *Fann v. State*, 702 S.W.2d 602, at 604–05 (Tex.Cr.App. 1985) (Opinion on State's motion for rehearing); See also *Polk v. State*, supra, at 394, n. 3. We have never said the issue of deadly weapon must be resolved at the punishment phase, however. The Court's holding in *Polk v. State*, supra, *viz:* that under certain circumstances a verdict of "guilty as charged in the indictment" at the end of the guilt stage of trial will constitute an affirmative finding, clearly militates against that conclusion.

In any event, assuming, without deciding, that the trial court erred to submit the special issue in the guilt/innocence charge, we find no egregious harm so as to justify reversal of the conviction in absence of an objection. *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984) (Opinion on State's motion for rehearing). Evidence of any weapon used would invariably be admissible at the guilt stage of trial as res gestae

4. This issue was raised in the court of appeals, which rejected it in its original unpublished opinion. Inexplicably, the issue is not reexam-

ined in the court's second, published opinion filed pursuant to Rule 101, supra. See n. 3, *ante.*

of the offense. That the specific character of weapon or manner of its use was erroneously made an issue to be resolved concurrently with the question of guilt or innocence could not, in our view, have so inflamed or distracted the jury as to deprive appellant of a fair and impartial trial.[5]

## IV.

■ One final matter needs to be addressed, bearing upon construction of Tex.R.App.Pro.Rule 101, as it applies to this cause. A short chronology of events is necessary to illustrate the problem.

Appellant's brief on direct appeal was filed in the court of appeals on June 26, 1987. In his ninth and tenth points of error therein he alleged that Article 37.07, § 4, V.A.C.C.P., was unconstitutional in that it violated both due course of law and separation of powers principles of both the state and federal constitutions. On November 12, 1987, the court of appeals issued an opinion in this cause,[6] ruling, *inter alia,* that the parole law charge statute was not unconstitutional. Coincidentally, on that same day this Court handed down its opinion on original submission in *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987). On December 11, 1987, appellant filed a petition for discretionary review in which he claimed both that the affirmative finding should have been deleted, under *Ex parte Patterson,* supra, and that, under authority of *Rose v. State,* supra, the parole law instruction should not have been submitted in his case. Thirteen days later, pursuant to Rule 101, supra, the court of appeals withdrew its original opinion and issued another which took account of both *Patterson* and our opinion on original submission in *Rose.* In its revised opinion the court of appeals acknowledged error in the submission of the parole law instruction, but found that error harmless under *Almanza v. State,* supra. See *Rose v. State,* supra,

at 537, n. 10. Appellant filed a second petition for discretionary review on February 8, 1988, in which he argued only that ground for review we have resolved today in Part III of this opinion.[7] He did not reiterate the grounds raised in his initial petition. On February 17, 1988, the Duty Judge of this Court, see Tex.R.App.Pro., Rule 212, expressly "approved for filing" appellant's second petition for discretionary review. The Duty Judge also made a notation on the face of appellant's first petition to "disregard" in view of the court of appeals' revised opinion under Rule 101, supra. Despite this notation, on April 8, 1988, the Court granted both appellant's petitions for discretionary review. We granted appellant's earlier petition specifically to decide how a Rule 101 opinion affects the status of the petition for discretionary review to which it was responsive.

Rule 101, supra, reads:

"Within fifteen days after a petition for discretionary review to the Court of Criminal Appeals has been filed with the Clerk of the Court of Appeals which delivered the decision, a majority of justices who participated in the decision may summarily reconsider and correct or modify the opinion and judgment of the court and shall cause the clerk to certify a copy thereof and include it among the materials forwarded to the Clerk of the Court of Criminal Appeals in accordance with Rule 202(f)."

Rule 202(f) provides that within fifteen days after a petition for discretionary review is filed in the court of appeals, the clerk of that court shall forward to the clerk of this Court "the petition and any copies thereof furnished by counsel, together with ... certified copies of any judgments, opinions and orders of the court of appeals." Read together, these provisions afford the petitioner no absolute entitlement to petition the Court to review an opinion of the court of appeals as modified

---

5. In its treatment of this point of error in its original withdrawn opinion in this cause, see n. 4, *ante,* the court of appeals concluded similarly that "no egregious harm has been demonstrated."

6. See nn. 3, 4 & 5, *ante.*

7. This second petition was not characterized by appellant as an amended or supplemental petition for discretionary review. See Tex.R.App. Pro., Rule 202(j).

under Rule 101. The modified opinion is simply forwarded to this Court along with the petition for discretionary review, with no additional time or mechanism provided petitioner to respond to the modification. Presumably this Court would allow an amended or supplemental petition to respond to a Rule 101 opinion from the court of appeals "when justice requires[.]" Tex. R.App.Pro.Rule 202(j). That is in essence what the Duty Judge did in approving appellant's second petition for filing in this cause. But leave to file an amended or supplemental petition is a matter of this Court's discretion rather than petitioner's right.

Thus, a petitioner has no guarantee under the Rules that any complaint he may have about a court of appeals' opinion that has been modified under Rule 101 will be reviewable. It would be unfair to deprive petitioner of *any* assured opportunity for review in this Court by holding that issuance of a modified opinion operates to vitiate the petition for discretionary review that prompted it. Under such a holding courts of appeals could effectively insulate their rulings from review by this Court. While it is true that as a practical matter a Rule 101 opinion often renders a petition for discretionary review meritless, that will by no means invariably be the case. A modified opinion may fail to address every issue raised in the petition. It may expressly remedy some but not every defect which the petition asserts exists in the court of appeals' initial disposition. It may simply reject all arguments made in the petition, leaving the initial disposition fully intact.[8] Under such circumstances an issue which is ripe for this Court's review under criteria set out in Tex.R.App.Pro.Rule 200(c), will be no less viable for having been rejected a second time in the court of appeals in a Rule 101 opinion. We hold that appellant's ground for review raising *Rose* error in his first petition for discretionary review has not been mooted merely

by virtue of the fact the court of appeals modified its opinion under Rule 101, supra, to revisit that contention.

Nor do we find the Duty Judge's apparent determination that the court of appeals' treatment of that ground in its Rule 101 opinion rendered appellant's first petition meritless to be dispositive under the circumstances presented here. Some four months after the Duty Judge acted in this cause, on June 15, 1988, this Court held in opinion on rehearing in *Rose v. State*, supra, that the proper harm analysis by which to measure *Rose* error is that contained in Tex.R.App.Pro. Rule 81(b)(2), rather than that of *Almanza v. State*, supra. In the interim between the opinion on original submission and the opinion on rehearing in *Rose*, a number of courts of appeals disposed of *Rose* claims under the *Almanza* harm analysis. After this Court issued its opinion on rehearing most causes in that posture were remanded to the courts of appeals for reevaluation of the question of harm under Rule 81(b)(2), supra. E.g., *Duggan v. State*, 778 S.W.2d 465 (Tex.Cr.App.1989). The Duty Judge could not have foreseen this eventuality on February 17, 1988, when he entered his notation to "disregard" appellant's first petition for discretionary review. Rather than treat appellant differently than those who were similarly situated, we will remand this cause to the court of appeals to remeasure harmfulness of the *Rose* error under the Rule 81(b)(2) standard.

Accordingly, the judgment of the court of appeals is vacated and the cause remanded for proceedings not inconsistent with this opinion.

McCORMICK, P.J., not participating.

---

**8.** It can be argued that because the Rules do not provide for a new petition for discretionary review to be filed in response to a modified opinion, Rule 101, supra, should not be interpreted to authorize a court of appeals to change its initial disposition of a case, but merely to "correct or modify" some minor defect or oversight, whether legal or factual, in its initial opinion. The State does not make this argument, however, and we need not resolve it today.