In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00094-CR
______________________________


CHARLES FIRTH, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the Fifth Judicial District Court
Bowie County, Texas
Trial Court No. 03F0701-005


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â On August 11, 2003, while investigating Bowie County burglaries committed by someone
driving a red car, sheriff's deputy George Huggins interviewed Charles Firth,


 after Firth waived his
Miranda


 rights. Sheriff's investigator Joe Langehennig witnessed the interview.


 Firth commented
that he did not drive a red car, but instead drove a purple or burgundy Toyota Corolla. Langehennig
asked Firth no questions during that interview, but remembered a report by Sally LaBombard that,
apparently unrelated to the "red car" burglaries being investigated, a man in a burgundy Toyota
Corolla had burglarized her home August 7. Firth was asked no questions about the LaBombard
burglary at the time. No part of the August 11 interview was electronically recorded. 
Â Â Â Â Â Â Â Â Â Â Â Â Langehennig later confirmed the vehicle description with LaBombard. He then prepared a
photographic lineup, from which LaBombard identified Firth as the man who burglarized her home. 
On August 13, Langehennig interviewed Firth concerning the LaBombard burglary. Firth was
warned of his rights, but waived those rights and gave a written statement in which he confessed to
the LaBombard burglary. Langehennig later located Firth's burgundy Toyota at a local car
dealership. 
Â Â Â Â Â Â Â Â Â Â Â Â Before his resulting trial for burglary of a habitation,


 Firth moved to suppress his written
statement, arguing that his August 11 oral statement's "noncompliance with Article 38.22" rendered
the August 13 written statement "fruit of the poisonous tree." The trial court overruled Firth's motion
to suppress and entered its findings of fact and conclusions of law.


 The trial court found that the
officers warned Firth of his constitutional rights pursuant to Miranda and that Firth waived those
rights before making incriminating statements. A Bowie County jury found Firth guilty and
recommended the maximum sentence of twenty years. The trial court sentenced Firth accordingly. 
Â Â Â Â Â Â Â Â Â Â Â Â The written statement was properly admitted, so we affirm the judgment. We reach that
conclusion because we hold (1) the August 11 statement was admissible under Article 38.22, and
(2)Â even if the August 11 statement was inadmissible, the August 13 statement was not excludable
on either constitutional or statutory grounds.
Â Â Â Â Â Â Â Â Â Â Â Â In reviewing the trial court's ruling on a motion to suppress, we apply a bifurcated standard
of review. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost
total deference to the trial court's determination of historical facts and review de novo the trial court's
application of the law to those facts. See id.
(1)Â Â Â Â Â Â Â The August 11 Statement Was Admissible Under Article 38.22
Â Â Â Â Â Â Â Â Â Â Â Â Article 38.22 of the Texas Code of Criminal Procedure sets out the conditions to be met
before the State may use a suspect's oral statement against him or her:
No oral . . . statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding unless:
(1) an electronic recording . . . is made of the statement;
(2) prior to the statement but during the recording the accused is given the
warning in Subsection (a) of Section 2 above and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warning;
 Â Â Â Â Â Â Â Â Â Â (3) the recording device was capable of making an accurate recording, the
operator was competent, and the recording is accurate and has not been altered;
 Â Â Â Â Â Â Â Â Â Â Â (4) all voices on the recording are identified; and
 Â Â Â Â Â Â Â Â Â Â Â Â (5) not later than the 20th day before the date of the proceeding, the attorney
representing the defendant is provided with a true, complete, and accurate copy of all
recordings of the defendant made under this article.

Tex. Code Crim. Proc. Ann. art. 38.22, Â§ 3(a).
Â Â Â Â Â Â Â Â Â Â Â Â Article 38.22 also provides that, if a suspect's custodial statement contains incriminating facts
that are later found to be true, the statement is admissible at trial:
Subsection (a) of this section shall not apply to any statement which contains
assertions of facts or circumstances that are found to be true and which conduce to
establish the guilt of the accused, such as the finding of secreted or stolen property
or the instrument with which he states the offense was committed.

Tex. Code Crim. Proc. Ann. art. 38.22, Â§ 3(c). The phrase "found to be true" means something
"the police are unaware [of] at the time of the confession [and is] later, after the confession, found
to be true."


 Romero v. State, 800 S.W.2d 539, 544â45 (Tex. Crim. App. 1990). Such corroborated
oral statements need only circumstantially demonstrate the defendant's guilt. Moore v. State, 999
S.W.2d 385, 400â01 (Tex. Crim. App. 1999). The two examples listed in Section 3(c) are for
illustrative purposes only and do not act as a limitation on qualifying oral statements. Port v. State,
791 S.W.2d 103, 106 (Tex. Crim. App. 1990).
Â Â Â Â Â Â Â Â Â Â Â Â Here, LaBombard had reported to Langehennig that, when she approached her house on
August 7, there was a burgundy Toyota Corolla parked in her driveway. So, Langehennig knew,
before the interview, that the suspect in that burglary drove such a car. Firth's statement, however,
that he owned a burgundy Corolla was previously unknown by the police officers. Langehennig
confirmed this fact and located the vehicle. His ownership of the car connected him to the
LaBombard robbery. Therefore, this single assertion of fact was conducive toward Firth's guilt and
thus rendered the oral statement admissible in its entirety.
Â Â Â Â Â Â Â Â Â Â Â Â We do not have any details as to the means of corroborating Firth's ownership of the
burgundy Corolla. However, the Texas Court of Criminal Appeals has confirmed that Article 38.22
places "no limitation" on the manner in which the facts asserted are corroborated. See id.; Briddle
v. State, 742 S.W.2d 379, 388 (Tex. Crim. App. 1987). Langehennig does not testify to the details
of that part of his investigation. The record shows only that he did confirm Firth owned the
burgundy Corolla shown in the photograph. So, the record provides sufficient evidence to draw the
conclusion that Langehennig did corroborate the information in Firth's oral statement to the officers. 
Regardless of how Langehennig located the vehicle, the important consideration is that he did, in
fact, locate it. See Port, 791 S.W.2d at 108.
Â Â Â Â Â Â Â Â Â Â Â Â A potential issue could arise by focusing on the fact that Langehennig already knew that a
burgundy Corolla was used in the August 7 burglary. The impact that prior knowledge has on the
"found to be true" element of Subsection (c) was outlined in Port. During the course of the
investigation of a missing postal carrier, Debra Sue Schatz, Port's father reported that his son was
missing and that there were bullet holes inside their house. Id. at 105. The father also handed over
a pistol that smelled as if it had been fired recently. Id. A consensual search of the Port home
yielded further incriminating evidence against the missing Port. Id.
Â Â Â Â Â Â Â Â Â Â Â Â When Port was apprehended and after he was read his MirandaÂ rights, Port explained that
he shot the victim in the head twice with his .22 caliber pistol. Id. Later, when Port saw the gun that
had been given to the police, he asked if that was his gun and stated he recognized it as the gun he
used to kill the victim. Id. at 106. On appeal, Port challenged the admission of these two statements
Â at Â trial, Â arguing Â that Â the Â circumstances Â did Â not Â satisfy Â Tex. Â Code Â Crim. Â Proc. Ann. art.
38.22, Â§ 3(c). Id. at 104. The intermediate court of appeals had held that Port's statements were
inadmissible because the incriminating facts in Port's statements were either already known or failed
to conduce to show guilt. Id. The Texas Court of Criminal Appeals rejected the court of appeals'
interpretation of Article 38.22, Section 3(c), concluding that the results of the victim's autopsy
confirmed the victim had been shot twice in the head. Id. at 108. Therefore, the first statement was
rendered admissible under Article 38.22. Id. As to the second statement, the court noted the police
already had custody of the gun. Id. However, the court pointed out, Port's assertion that the gun was
the one he used to kill the victim was not found to be true until ballistics tests confirmed that the gun
in question was the gun used to kill the victim. Id. 
Â Â Â Â Â Â Â Â Â Â Â Â In contrast, when the record contained no evidence that the fact was actually corroborated
in any manner, the Texas Court of Criminal Appeals held that the Section 3(c) exception was not
satisfied. See Romero, 800 S.W.2d at 545. Such is not the case here. While, here, we have scant
evidence of the manner in which Langehennig corroborated Firth's statement, we do have evidence
that he did corroborate the fact by locating the car. Under the current state of the law concerning
Section 3(c), we conclude the record contains sufficient corroboration to establish the reliability of
Firth's oral statement. See Briddle, 742 S.W.2d at 388. 
Â Â Â Â Â Â Â Â Â Â Â Â We conclude the limited exception of Tex. Code Crim. Proc. Ann. art. 38.22, Â§ 3(c) applies
to the unrecorded oral statement here since the statement led to corroboration of previously-unknown
facts which tended to prove Firth's guilt in this case. Application of this exception touches on the
admissibility of only the unrecorded oral statement, not the subsequent written statement, the
admission of which Firth complains. Nevertheless, since the unrecorded oral statement could have
been properly admitted into evidence, there can be no taint that would follow from it and attach to
the subsequent written statement.



(2)Â Â Â Â Â Â Â Even if the August 11 Statement Was Inadmissible, the August 13 Statement Was Not
Excludable on Either Constitutional or Statutory Grounds

Â Â Â Â Â Â Â Â Â Â Â Â Even if Article 38.22, Section 3(c) did not apply to the unrecorded statement taken August
11, that does not require exclusion of the August 13 written statement. To fully understand this
point, we examine Article 38.22 in its two major components: the constitutional safeguards
consistent with Miranda and the statutory guidelines for admissibility of an oral statement. See
Heiselbetz v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). The Fifth Amendment privilege
against self-incrimination is protected during custodial interrogation by certain procedural safeguards
delineated in Miranda. These constitutional safeguards have been codified in the Texas Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22. Beyond the constitutional
requirements, the additional recording requirements with which law enforcement officers must
comply in order for an oral statement to be admissible have been treated as evidentiary in nature
rather than constitutionally protected.
Â Â Â Â Â Â Â Â Â Â Â Â Firth does not contend the oral statement of August 11 was involuntary or coerced. Firth
contends, merely, that "his written confession was obtained following a previous oral statement
which was inadmissible pursuant to Article 38.22 of the Texas Code of Criminal Procedure, thereby
making his written confession 'fruit of the poisonous tree.'"
Â Â Â Â Â Â Â Â Â Â Â Â Whether Firth complains of a failure to provide him warnings in compliance with Miranda
or Â a Â failure Â to Â record Â the Â oral Â statement Â pursuant Â to Â Tex. Code Crim. Proc. Ann. art. 38.22,
Â§ 3(a)(1),


 we hold that any noncompliance with Article 38.22 did not taint the subsequent written
statement. That is true because (a) officers complied with Miranda and (b)Â noncompliance with
Article 38.22's statutory component does not require exclusion of a subsequent statement.
Â Â Â Â Â Â Â Â Â Â Â Â (a)Â Â Â Â Â Â Â The Officers Complied with Miranda
Â Â Â Â Â Â Â Â Â Â Â Â Under our standard of review, we afford a great deal of deference to the trial court's findings
when those findings turn on issues of credibility. Here, both officers testified that Firth was warned
of his constitutional rights before the August 11 questioning and that Firth waived those rights.
Â Â Â Â Â Â Â Â Â Â Â Â We defer to the trial court's finding that Deputy Huggins properly warned Firth in compliance
with Miranda and Article 38.22's codification of Miranda. The uncontroverted evidence in the
record supports this conclusion. To the extent Firth's point of error raises noncompliance with
Miranda and Section 3(a)(2) of Article 38.22, we overrule those contentions.



Â Â Â Â Â Â Â Â Â Â Â Â (b)Â Â Â Â Â Â Â Noncompliance with Article 38.22's Statutory Component Does Not Require
Exclusion of a Subsequent Statement

Â Â Â Â Â Â Â Â Â Â Â Â We next address Firth's point of error as one raising only the failure of the officers to comply
with the statutory requirements of Article 38.22, Section 3. Absent an exception, the failure to
record Firth's oral statement made August 11 would render Firth's oral statement inadmissible. Such
a failure would not, however, implicate Firth's constitutional rights against self-incrimination. It
follows, as well, that such a failure would have no bearing on the admissibility of any subsequent
written statement.
Â Â Â Â Â Â Â Â Â Â Â Â The United States Constitution does not require the electronic recording of oral statements
made in response to custodial interrogation. See United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir.
1988); Hawes v. State, 125 S.W.3d 535, 541 (Tex. App.âHouston [1st Dist.] 2002, no pet.). The
Texas Constitution also does not require recording oral statements. Hawes, 125 S.W.3d at 541.
Â Â Â Â Â Â Â Â Â Â Â Â Admission of statements in violation of the recording requirement of Article 38.22 is
nonconstitutional error. Nonn v. State, 117 S.W.3d 874, 879â80 (Tex. Crim. App. 2003); Hawes,
125 S.W.3d at 541; see Hernandez v. State, 114 S.W.3d 58, 65 (Tex. App.âFort Worth 2003, pet.
ref'd); Davidson v. State, 42 S.W.3d 165, 167 (Tex. App.âFort Worth 2001, pet. ref'd). Because
errors committed with respect to the recording requirements of Article 38.22 do not implicate a
defendant's constitutional rights, the effect of any such error would have been limited to the oral
statement alone. The "fruit of the poisonous tree" doctrine is a constitutional doctrine and does not
apply to statutory noncompliance. No taint would follow to attach to a later statement lawfully
taken.
Â Â Â Â Â Â Â Â Â Â Â Â The Austin Court of Appeals applied such a distinction in a recent case with similar facts
concerning an appellant's statements to officers. Millslagle v. State, 150 S.W.3d 781, 784 (Tex.
App.âAustin 2004, pet. dism'd). In Millslagle, the court treated the issue strictly in terms of
statutory application and held the failure to record appellant's oral statements did not render his later
written statement inadmissible. Id. Millslagle contended that his written statement should not have
been admitted because the interrogation that immediately preceded it was not recorded. The Austin
court noted that Article 38.22 did not "speak directly to his contention." Id. Although the failure
to record appellant's oral statements to officers did render those oral statements inadmissible under
Section 3 of the statute, the court pointed out that Section 3 does not govern the admissibility of
Millslagle's subsequent written statement. The admissibility of his written custodial statement was
governed by Section 2 of Article 38.22, and requirements of Section 2 were clearly satisfied. Id.
Â Â Â Â Â Â Â Â Â Â Â Â The court went on to discuss its opinion in Horton v. State, 78 S.W.3d 701 (Tex.
App.âAustin 2002, pet. ref'd), in which it similarly upheld the admission of a written statement
made immediately after the accused made a voluntary, but unrecorded, oral statement. The court
dispelled Millslagle's misunderstanding of its holding in Horton, reiterating that the written
statement was not tainted by the inadmissible oral statement. Id.
Â Â Â Â Â Â Â Â Â Â Â Â We conclude Firth's contention fails because his unrecorded oral statement was admissible
under Article 38.22, Section 3(c) of the Texas Code of Criminal Procedure. The factual assertions
he made in that statement were later found to be true and tended to show his guilt. Even if that
conclusion is incorrect, the officers' noncompliance with respect to Firth's oral statement did not taint
his subsequent written confession. The trial court properly admitted the written statement. We
affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â March 29, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â June 23, 2005

Do Not Publish



nce>[1]
in Texarkana, Texas.  On several
occasions, he allowed Donna Taylor and Annie Bagsby, prostitutes, to stay in
his apartment where they could shower and sleep. Â Nelson would sleep in his bed; the women, on a
couch.Â  Nelson was a crack cocaine dealer,
and the women had regularly purchased drugs from him.Â  On December 19, 2007, the women had been in
and out of NelsonÂs apartment, which they said was normal.Â  At one point, they came to the apartment to
buy twenty dollarsÂ worth of crack cocaine.Â 
Taylor said Nelson was very intoxicated at the time.Â  When he could not find the drugs, he accused
the women of stealing them.Â  Although
they denied his accusation, Nelson pointed a gun at them and told them to take
off their clothes so he could search them.Â 
The drugs were not found, and Nelson allowed the women to dress.Â  At that point, continuing his accusations, he
shot Bagsby in the abdomen or midsection.Â 
He then told Taylor to inspect BagsbyÂs vaginal area, ordering Taylor to
pull BagsbyÂs pants down.Â  Nelson again
shot BagsbyÂthis time in the buttocksÂand told Taylor to ÂGet this white bitch
out of his house.ÂÂ  Before the women could
leave, though, Nelson pointed his pistol at BagsbyÂs head and threatened to
kill her.Â  Taylor helped Bagsby out of
the apartment and to a nearby hospital.Â  

Â Â Â Â Â Â Â Â Â Â Â  When
Nelson was later approached by police, he denied knowledge of the shooting and
did not make any assertions of stolen drugs or that he had been the victim of
any burglary.Â  A Bowie County jury found
Nelson guilty of aggravated assault with a deadly weapon.Â  At punishment, after Nelson pled ÂtrueÂ to
two enhancement allegations, the jury found those enhancements true and
recommended a sentence of sixty yearsÂ imprisonment.

(1)Â Â Â Â Â Â Â  Nelson Was Not Entitled to a Jury
Instruction on Defense of Property

Â 

Â Â Â Â Â Â Â Â Â Â Â  At
trial, Nelson asked for an instruction in the jury charge Âabout an individualÂs
right to protect their property or protect their home in the event of a
burglary.ÂÂ  The trial court denied the
request, saying there was no evidence to support the instruction.

Â Â Â Â Â Â Â Â Â Â Â  An
accused is entitled to an instruction on any defensive issue raised by the evidence,
whether that evidence is weak or strong, whether it is unimpeached or
contradicted, and regardless of what the trial court may think about the
credibility of the evidence. Â Granger v. State, 3 S.W.3d 36, 38 (Tex.
Crim. App. 1999); Hamel v. State, 916
S.W.2d 491, 493 (Tex. Crim. App. 1996). Â If
the evidence does not raise an issue on the defense, an instruction is not
required. Â See Dyson v. State, 672
S.W.2d 460, 463 (Tex. Crim. App. 1984).

A person in lawful possession of land or
tangible, movable property is justified in using force against another when and
to the degree the actor reasonably believes the force is immediately necessary
to prevent or terminate the otherÂs trespass on the land or unlawful
interference with the property.

Â 

Tex.
Penal Code Ann. Â§ 9.41(a) (Vernon 2003).Â 
NelsonÂs theory is that Taylor and Bagsby took his crack cocaine, which
fact then triggered NelsonÂs right to defend his property.Â  This theory fails for various reasons.

Â Â Â Â Â Â Â Â Â Â Â  First,
Nelson could not have Âlawful possessionÂ of crack cocaine.Â  Breakiron
v. State, 79 S.W.3d 103, 106 (Tex. App.ÂTexarkana 2002, no pet.).Â  Breakiron contended he had a greater right to
either cocaine or marihuana, which he claimed had been taken by the victim, and
he therefore was entitled to a jury instruction of defense of property.Â  Writing for this Court, former Chief Justice
Cornelius pointed out that Â[l]awful possession is defined as the possession of
a controlled substance that has been obtained in accordance with state or
federal law.Â Â Tex. Health & Safety Code Ann. Â§ 481.002(24) (Vernon 2010).Â  As in Breakiron,
the instant record has no evidence that Nelson somehow had lawful possession of
the crack cocaine he accused Bagsby and Taylor of stealing.

Â Â Â Â Â Â Â Â Â Â Â  Breakiron bore another similarity to the
instant case.Â  In Breakiron, the victim, BreakironÂs girlfriend, testified the two
argued, which led to Breakiron assaulting the girlfriend, because Breakiron
thought she had Âstole[n] his drugs again.Â 
He was angry . . . .ÂÂ  Breakiron, 79 S.W.3d at 106.Â  Our opinion pointed out there was no
testimony or evidence that Breakiron was 

Â 

trying to prevent the taking or interference
with his drugs, or that there was any struggle between Breakiron and the victim
over the possession of any drugs or any other property. Â The most that may be inferred from the
testimony is that Breakiron was angry with the victim for some previous event
and was assaulting her in retribution for that. Â Such evidence does not raise an issue of
protection or defense of property.

Â 

Id.Â  In NelsonÂs case, the two women testified
Nelson was drunk and could not find his crack cocaine, and then accused them of
taking it.Â  This does not raise an issue
of protection or defense of property.Â  

Â Â Â Â Â Â Â Â Â Â Â  Second,
in order to claim defense of property, a defendant must admit to the criminal
conduct with which he or she has been charged and then assert the statutory
defense.Â  VanBrackle v. State, 179 S.W.3d 708, 715 (Tex. App.ÂAustin 2005, no
pet.) (citing Young v. State, 991
S.W.2d 835, 838 (Tex. Crim. App. 1999)). Â Accordingly, a defendant is not entitled to a
jury instruction on defense of property Âif, through his own testimony or the
testimony of others, he claims he did not perform the assaultive acts alleged,
or that he did not have the requisite culpable mental state, or both.Â Â Id.
at 715.Â  Compare also Juarez v. State, No. PD-0666-09, 2010 WLÂ 1222680
(Tex. Crim. App. Mar. 31, 2010) (confession and avoidance doctrine applies
where defendant sought instruction on defense of necessity; defendant entitled
to defense instruction because, under facts of case, he admitted to offensive
conduct and to statutory mens rea).Â  Here, Nelson did not admit shooting Bagsby.Â  Detective Lisa Green stated that, when she
tried to talk to Nelson about the incident, he claimed to know nothing about the
shooting, and he said nothing to the detective about any alleged burglary.[2]Â  

Â Â Â Â Â Â Â Â Â Â Â  Nelson
was not entitled to an instruction on defense of property, and the trial court
did not err in denying NelsonÂs request.

(2)Â Â Â Â Â Â Â  The Trial Court Has Remedied the Lack of
an Affirmative Deadly-Weapon Finding in NelsonÂs Judgment

Â 

Â Â Â Â Â Â Â Â Â Â Â  The
jury found Nelson Âguilty of Aggravated Assault with a Deadly Weapon as charged
in the indictmentÂ; and the verdict included an affirmative finding on a
separate Âspecial issue,Â finding Nelson Âused a deadly weapon, a pistol,
during the commission of the offense.ÂÂ 
In fact, after the jury verdict was read, stating the jury found Nelson Âguilty
of aggravated assault with a deadly weapon as charged in the indictment,Â the
State asked if there had been a finding on the submitted special issue of use
of a deadly weapon.Â  The jury had
answered that question ÂYes.ÂÂ  Later,
after the trial court had dismissed the jury and pronounced sentence, the
attorney for the State made the following comment:

Â Â Â Â Â Â Â Â Â Â Â  [StateÂs
Attorney]Â  Judge, the only other thing, I
believe that in that judgment it needs to also pronounce the fact that there
was an affirmative finding of the use of a deadly weapon.

Â 

Â Â Â Â Â Â Â Â Â Â Â  THE
COURT:Â  Yeah, and the jury did find that
and that was listed in the document, but I would note that the jury previously
did find that it was aggravated assault with a deadly weapon with an
affirmative finding of a deadly weapon.

Â 

Although the trial courtÂs statement may
not be perfectly clear, the juryÂs verdict contained an explicit affirmative
finding, and Nelson never argued or objected that a deadly-weapon finding had
not been made.Â  Here, the record presents
a situation where the oral pronouncement of sentence did not agree with the
written judgment.Â  The trial courtÂs
judgment listed the offense for which Nelson had been convicted as ÂAGGRAVATED
ASSAULT BODILY INJURY Â DEADLY WEAPON,Â but in the space to indicate whether
the judgment included a finding on deadly weapon, the judgment reads, ÂN/A.ÂÂ  The trial court later entered an amended
judgment, however, stating in the same space that a deadly weapon, a firearm,
had been used. 

Â Â Â Â Â Â Â Â Â Â Â  As
a general rule, when the oral pronouncement of sentence and the written
judgment differ, the oral pronouncement controls. Â Ex parte
Huskins, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005); see also Ex parte Thompson, 273 S.W.3d 177, 178 n.3 (Tex. Crim.
App. 2008) (when oral pronouncement of sentence and written judgment vary, oral
pronouncement controls and written judgment can be corrected via nunc pro tunc).
Â A nunc pro tunc judgment is appropriate
to correct clerical errors in a judgment.Â 
A clerical error is one Âin which no judicial reasoning contributed to
[its] entry, and for some reason [was] not entered of record at the proper
time.Â Â State v. Bates, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); State v. Dudley, 223 S.W.3d 717, 721Â22
(Tex. App.ÂTyler 2007, no pet.); see also
Tex. R. App. P. 23.1. Â Nunc pro tunc orders are not appropriate to
address Âjudicial errors,Â that is, errors that are the product of judicial
reasoning or determination. Â Bates, 889 S.W.2d at 309; Dudley, 223 S.W.3d at 722.

Â Â Â Â Â Â Â Â Â Â Â  Here,
the trial courtÂs amended judgment was an appropriate remedy to make the
written judgment correctly reflect proceedings in the trial court; the jury
clearly made an affirmative finding that Nelson used or exhibited a deadly
weapon, and the trial courtÂs judgment now correctly reflects that
finding.Â  See Ex parte Poe, 751
S.W.2d 873, 875Â76 (Tex. Crim. App. 1988) (en banc) (once jury finds defendant
used or exhibited deadly weapon during commission ofÂ  offense, trial court must enter in judgment a
finding that deadly weapon was used or exhibited);Â  Jones
v. State, 795 S.W.2d 199, 200 n.1 (Tex. Crim. App. 1990) (purpose of nunc
pro tunc order is to have court records accurately reflect judgment actually
rendered). 

Â Â Â Â Â Â Â Â Â Â Â  These
points of error are overruled.

(3)Â Â Â Â Â Â Â  Nelson
Failed to Preserve His Complaint Regarding Notice of Enhancement Allegations

Â Â Â Â Â Â Â Â Â Â Â  At the
beginning of the punishment phase, the State read to the jury two prior felony
convictions for the purpose of seeking an elevated punishment range.Â  See
Tex. Penal Code Ann.
Â§Â 12.42(d) (Vernon Supp. 2009).Â  The
indictment had alleged two prior Texas convictions, but when the StateÂs
attorney read the enhancement allegations at the beginning of punishment, he
instead read one of the Texas convictions specified in the indictment and a
felony conviction from Arkansas.Â 
Nevertheless, Nelson pled true to both allegations.Â  Nelson now claims that the oral notice of the
State reading that Arkanasas conviction was insufficient.Â  We need not address that claim, because no
error was preserved.

Â Â Â Â Â Â Â Â Â Â Â  We find
nothing in the record indicating the State ever gave any form of notice that it
would use an Arkansas conviction to enhance NelsonÂs range of punishment.Â  Nevertheless, when the State read the details
of that Arkansas conviction as well as one of the Texas convictions contained
in the indictmentÂs habitual-offender paragraph, Nelson made no objection.[3]Â  Rather, he pled ÂtrueÂ to both enhancement
allegations.Â  When the State offered pen
packets, containing judgments of conviction for the Arkansas felony and the two
Texas felonies, Nelson, through his attorney, said, ÂYour Honor, those have
been provided to me.Â  We have no
objections.ÂÂ Â  No objection having been
made, we find Nelson failed to preserve for appellate complaint his argument
that he did not receive sufficient notice of the StateÂs intent to use the
Arkansas conviction for enhancement purposes.

Â Â Â Â Â Â Â Â Â Â Â  Nelson cites
Luken v. State, 780 S.W.2d 264, 268 (Tex.
Crim. App. 1989), for the proposition that Âa defendant need not object to
an indictment that lacks a notice of enhancement in order to preserve the issue
for review.ÂÂ  However, Luken involved the StateÂs failure to
give the defendant notice that the State would seek an affirmative finding on
the use or exhibition of a deadly weapon.Â 
Luken did not object to the indictmentÂs lack of a deadly-weapon
allegation.Â  The Texas Court of Criminal
Appeals pointed out that, in the circumstances of that case, Luken had no
reason to suspect the State would seek such a finding until it asked for a
special issue on the matter in the guilt/innocence charge.Â  It is true the Luken court Âanalogize[d] . . . to submission of enhancement counts
at the punishment stage of trial.ÂÂ  Luken, 780 S.W.2d at 268.Â  But that discussion, and indeed most of the
discussion in Luken, focused on the
indictmentÂs lack of notice that the State would seek a finding on use or
exhibition of a deadly weapon.Â  The
holding of the Texas Court of Criminal Appeals in Luken centers on the fact that, in light of the then recently
enacted Texas Code of Criminal Procedure Article 1.14(b), an indictment is not
defective merely because it omits a deadly-weapon notice, or, conceivably,
enhancement allegations.Â  It may be that
Nelson interprets the following as relieving him of the duty to object to the
lack of notice:

we would not hold that a trial court is
authorized to find, or to submit the question to the jury whether an accused
has been formerly convicted for purposes of enhancement of punishment under
Chapter 12 of the Penal Code, on the theory that the accused failed to object
that the indictment did not include enhancement allegations. Again, there is no
Âdefect, error, or irregularityÂ in an indictment containing no enhancement
counts.Â  It simply fails to place the
accusedÂs status as a recidivist in issue. . . .Â  We similarly decline to hold that under
Article 1.14(b), supra, an accused must object before trial to the failure of
the StateÂs pleadings to allege use or exhibition of a deadly weapon in order
to preserve any challenge to submission of that issue to the factfinder.

Â 

Id. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Unlike
Luken, Nelson was made aware that his status as a recidivist was in issue, as
the indictment alleged two prior felony convictions under the title ÂHABITUAL
OFFENDER NOTICEÂ and the possibility of an enhanced range of punishment of not
less than twenty-five years, or more than ninety-nine years or life, was
discussed at voir dire.

Â Â Â Â Â Â Â Â Â Â Â  We
also find it significant that Luken
predates Marin v. State, 851 S.W.2d
275, 279Â80 (Tex. Crim. App. 1993), which detailed three categories of
rights:Â  those which must be specifically
invoked or else forfeited, those which must be explicitly waived, and those
which cannot be waived.Â  We have found no
authority indicating that notice of enhancement allegations, especially in a
situation such as this where the defendant was clearly on notice that
enhancement was being pursued, is a right which either cannot be waived or must
be explicitly waived.Â  We, therefore,
find that Nelson failed to preserve his claim of lack of advance notice
regarding the StateÂs use of the Arkansas conviction for enhancement
purposes.Â  See Harris v. State, 204
S.W.3d 19, 27 (Tex. App.ÂHouston [14th Dist.] 2006, pet. refÂd).[4]Â  In this connection, it is worth emphasis that
Nelson evinced no surprise or objection when the prospect of the enhanced
sentence range was broached in voir dire, that he later pled true to the
announced enhancement convictions, and that, when the State tendered into
evidence the pen packetsÂproviding the judgments establishing the enhancement
allegationsÂhe affirmatively stated that he had no objection to their admission
and expressly acknowledged that they had been provided to him earlier.

Â Â Â Â Â Â Â Â Â Â Â  Finally, we
point out that NelsonÂs situation is different from those where a defendant
pleads ÂtrueÂ to enhancement allegations or otherwise fails to object; but
later complains that a prior conviction used for enhancement purposes was not
final or otherwise did not properly engage the applicability of the
habitual-offender statute.Â  See Williams v. State, No. 06-09-00133-CR,
2010 Tex. App. LEXIS 2257 (Tex. App.ÂTexarkana Mar. 31, 2010, pet. filed); Ex parte Rich, 194 S.W.3d 508, 513Â14
(Tex. Crim. App. 2006); Sanders v. State,
785 S.W.2d 445 (Tex. App.ÂSan Antonio 1990, no pet.).Â  NelsonÂs situation is notice related, in
other words, purely procedural, as contrasted to the other situation, in which
there is a substantive defect in the prior conviction.

Â Â Â Â Â Â Â Â Â Â Â  Nelson
failed to preserve this claim for appellate review.[5]Â  Thus, the result reached by the trial court
should be affirmed.

Â Â Â Â Â Â Â Â Â Â Â  There
is, however, a small adjustment needed in the judgment.Â  The trial courtÂs amended judgment reads ÂN/AÂ
in the blanks for pleas to, and findings on, enhancement paragraphs.Â  We reform the trial courtÂs judgment to
indicate that Nelson pled true to the first and second enhancement paragraphs
and that both paragraphs were found to be true.Â 
See Tex. R. App. P. 43.2(b); Bigley
v. State, 865 S.W.2d 26, 27Â28 (Tex. Crim. App. 1993).

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the trial courtÂs judgment, as reformed.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  May
10, 2010Â  

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  June
29, 2010

Â 

Do Not PublishÂ Â Â Â Â Â Â Â Â Â  

Â 











[1]There
was some indication NelsonÂs ÂapartmentÂ was a room in his parentsÂ home.Â  

Â 





[2]It
is worth pointing out that, even if there was any evidence entitling Nelson to
assert his claim of defense of property, the record is completely devoid of any
justification for his use of deadly forceÂshooting Bagsby twice and putting the
gun to her head and threatening to kill her.Â 
See Armstrong v. State, 179 S.W.3d 84, 88 (Tex. App.ÂFort WorthÂ  2005, no pet.) (no evidence supporting
ArmstrongÂs assertion victim had knife, and therefore, Armstrong was justified
in stabbing victim); Hudson v. State,
145 S.W.3d 323, 325 (Tex. App.ÂFort Worth 2004, pet. refÂd) (ÂWhen there is no
evidence of a belief that force is needed to defend property, a criminal
defendant is not entitled to a jury instruction on defense of property.Â); Hernandez v. State, 914 S.W.2d 218, 224
(Tex. App.ÂEl Paso 1996, pet. refÂd) (although there was evidence defendantÂs
home had been site of drive-by shooting, that event had already occurred
earlier in evening, hence no evidence to support defensive use of deadly
force).





[3]The
Texas Court of Criminal Appeals has held that when the enhancement allegations
are read at the beginning of the punishment phase, and the defendant offers no
defense and does not request a continuance, constitutionally sufficient notice
has been provided.Â  Villescas v. State, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) (Âdue
process does not even require that the notice be given before the guilt phase
beginsÂ; and where defendant does not offer defense to enhancement allegations
or suggest he or she needs continuance in order to prepare defense, Ânotice
given at the beginning of the punishment phase satisfies the federal
constitutionÂ ).





[4]Harris
was convicted of felony DWI, and his sentence was enhanced under Section
12.42(d) of the Texas Penal Code.Â  On
appeal, he claimed error, saying that one misdemeanor DWI conviction was used
to elevate his instant charge to a felony; but that same misdemeanor had
previously been used as a predicate to secure a prior felony DWI conviction,
which was then used to enhance his range of punishment at his current
trial.Â  The appellate court found that
Harris failed to preserve this complaint with a timely trial objection.Â  Harris,
204 S.W.3d at 27.Â  Harris, just like
Nelson, was clearly aware that enhancement was being sought.





[5]See also Marshall v. State, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006).Â  The State alleged prior felony convictions,
but with citation to Section 12.42(b) of the Texas Penal Code, which would
expose Marshall to a first-degree punishment range.Â  Tex.
Penal Code Ann. Â§ 12.42(b) (Vernon Supp. 2009).Â  Other felony convictions were noticed, in a
pleading expressing intent to introduce evidence of extraneous acts.Â  Tex. Code
Crim. Proc. Ann. art. 37.07, Â§ (3)(a), (g) (Vernon Supp. 2009).Â  The Texas Court of Criminal Appeals noted
that, in the particular circumstances of that case, Marshall may not have been
aware the State was seeking the higher range of punishment provided in Section
12.42(d).Â  ÂHowever, when the jury charge
was read and it became abundantly clear that the state was asking for
enhancement far beyond that specified in its notice to appellant, appellant was
bound to object.ÂÂ  Marshall, 185 S.W.3d at 903.