In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00184-CR

                                                ______________________________

 

 

                              WILLIAM HOWARD NELSON,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 202nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 08F0195-202

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            When
William Howard Nelson could not find his crack cocaine, he accused two young “professional”
women in his residence of stealing the drugs. 
He forced the women to disrobe so he could search for his drugs; not
finding the contraband, he shot one of the women.  For this, he was convicted of aggravated
assault with a deadly weapon.  We affirm the
trial court’s judgment because (1) Nelson was not entitled to a jury instruction
on defense of property, (2) the trial court has remedied the lack of an
affirmative deadly-weapon finding in Nelson’s judgment, and (3) Nelson
failed to preserve his complaint regarding notice of enhancement allegations.

            Nelson
lived in an “apartment”[1]
in Texarkana, Texas.  On several
occasions, he allowed Donna Taylor and Annie Bagsby, prostitutes, to stay in
his apartment where they could shower and sleep.  Nelson would sleep in his bed; the women, on a
couch.  Nelson was a crack cocaine dealer,
and the women had regularly purchased drugs from him.  On December 19, 2007, the women had been in
and out of Nelson’s apartment, which they said was normal.  At one point, they came to the apartment to
buy twenty dollars’ worth of crack cocaine. 
Taylor said Nelson was very intoxicated at the time.  When he could not find the drugs, he accused
the women of stealing them.  Although
they denied his accusation, Nelson pointed a gun at them and told them to take
off their clothes so he could search them. 
The drugs were not found, and Nelson allowed the women to dress.  At that point, continuing his accusations, he
shot Bagsby in the abdomen or midsection. 
He then told Taylor to inspect Bagsby’s vaginal area, ordering Taylor to
pull Bagsby’s pants down.  Nelson again
shot Bagsby—this time in the buttocks—and told Taylor to “Get this white bitch
out of his house.”  Before the women could
leave, though, Nelson pointed his pistol at Bagsby’s head and threatened to
kill her.  Taylor helped Bagsby out of
the apartment and to a nearby hospital.  

            When
Nelson was later approached by police, he denied knowledge of the shooting and
did not make any assertions of stolen drugs or that he had been the victim of
any burglary.  A Bowie County jury found
Nelson guilty of aggravated assault with a deadly weapon.  At punishment, after Nelson pled “true” to
two enhancement allegations, the jury found those enhancements true and
recommended a sentence of sixty years’ imprisonment.

(1)        Nelson Was Not Entitled to a Jury
Instruction on Defense of Property

 

            At
trial, Nelson asked for an instruction in the jury charge “about an individual’s
right to protect their property or protect their home in the event of a
burglary.”  The trial court denied the
request, saying there was no evidence to support the instruction.

            An
accused is entitled to an instruction on any defensive issue raised by the evidence,
whether that evidence is weak or strong, whether it is unimpeached or
contradicted, and regardless of what the trial court may think about the
credibility of the evidence.  Granger v. State, 3 S.W.3d 36, 38 (Tex.
Crim. App. 1999); Hamel v. State, 916
S.W.2d 491, 493 (Tex. Crim. App. 1996).  If
the evidence does not raise an issue on the defense, an instruction is not
required.  See Dyson v. State, 672
S.W.2d 460, 463 (Tex. Crim. App. 1984).

A person in lawful possession of land or
tangible, movable property is justified in using force against another when and
to the degree the actor reasonably believes the force is immediately necessary
to prevent or terminate the other’s trespass on the land or unlawful
interference with the property.

 

Tex.
Penal Code Ann. § 9.41(a) (Vernon 2003). 
Nelson’s theory is that Taylor and Bagsby took his crack cocaine, which
fact then triggered Nelson’s right to defend his property.  This theory fails for various reasons.

            First,
Nelson could not have “lawful possession” of crack cocaine.  Breakiron
v. State, 79 S.W.3d 103, 106 (Tex. App.—Texarkana 2002, no pet.).  Breakiron contended he had a greater right to
either cocaine or marihuana, which he claimed had been taken by the victim, and
he therefore was entitled to a jury instruction of defense of property.  Writing for this Court, former Chief Justice
Cornelius pointed out that “[l]awful possession is defined as the possession of
a controlled substance that has been obtained in accordance with state or
federal law.”  Tex. Health & Safety Code Ann. § 481.002(24) (Vernon 2010).  As in Breakiron,
the instant record has no evidence that Nelson somehow had lawful possession of
the crack cocaine he accused Bagsby and Taylor of stealing.

            Breakiron bore another similarity to the
instant case.  In Breakiron, the victim, Breakiron’s girlfriend, testified the two
argued, which led to Breakiron assaulting the girlfriend, because Breakiron
thought she had “stole[n] his drugs again. 
He was angry . . . .”  Breakiron, 79 S.W.3d at 106.  Our opinion pointed out there was no
testimony or evidence that Breakiron was 

 

trying to prevent the taking or interference
with his drugs, or that there was any struggle between Breakiron and the victim
over the possession of any drugs or any other property.  The most that may be inferred from the
testimony is that Breakiron was angry with the victim for some previous event
and was assaulting her in retribution for that.  Such evidence does not raise an issue of
protection or defense of property.

 

Id.  In Nelson’s case, the two women testified
Nelson was drunk and could not find his crack cocaine, and then accused them of
taking it.  This does not raise an issue
of protection or defense of property.  

            Second,
in order to claim defense of property, a defendant must admit to the criminal
conduct with which he or she has been charged and then assert the statutory
defense.  VanBrackle v. State, 179 S.W.3d 708, 715 (Tex. App.—Austin 2005, no
pet.) (citing Young v. State, 991
S.W.2d 835, 838 (Tex. Crim. App. 1999)).  Accordingly, a defendant is not entitled to a
jury instruction on defense of property “if, through his own testimony or the
testimony of others, he claims he did not perform the assaultive acts alleged,
or that he did not have the requisite culpable mental state, or both.”  Id.
at 715.  Compare also Juarez v. State, No. PD-0666-09, 2010 WL 1222680
(Tex. Crim. App. Mar. 31, 2010) (confession and avoidance doctrine applies
where defendant sought instruction on defense of necessity; defendant entitled
to defense instruction because, under facts of case, he admitted to offensive
conduct and to statutory mens rea).  Here, Nelson did not admit shooting Bagsby.  Detective Lisa Green stated that, when she
tried to talk to Nelson about the incident, he claimed to know nothing about the
shooting, and he said nothing to the detective about any alleged burglary.[2]  

            Nelson
was not entitled to an instruction on defense of property, and the trial court
did not err in denying Nelson’s request.

(2)        The Trial Court Has Remedied the Lack of
an Affirmative Deadly-Weapon Finding in Nelson’s Judgment

 

            The
jury found Nelson “guilty of Aggravated Assault with a Deadly Weapon as charged
in the indictment”; and the verdict included an affirmative finding on a
separate “special issue,” finding Nelson “used a deadly weapon, a pistol,
during the commission of the offense.” 
In fact, after the jury verdict was read, stating the jury found Nelson “guilty
of aggravated assault with a deadly weapon as charged in the indictment,” the
State asked if there had been a finding on the submitted special issue of use
of a deadly weapon.  The jury had
answered that question “Yes.”  Later,
after the trial court had dismissed the jury and pronounced sentence, the
attorney for the State made the following comment:

            [State’s
Attorney]  Judge, the only other thing, I
believe that in that judgment it needs to also pronounce the fact that there
was an affirmative finding of the use of a deadly weapon.

 

            THE
COURT:  Yeah, and the jury did find that
and that was listed in the document, but I would note that the jury previously
did find that it was aggravated assault with a deadly weapon with an
affirmative finding of a deadly weapon.

 

Although the trial court’s statement may
not be perfectly clear, the jury’s verdict contained an explicit affirmative
finding, and Nelson never argued or objected that a deadly-weapon finding had
not been made.  Here, the record presents
a situation where the oral pronouncement of sentence did not agree with the
written judgment.  The trial court’s
judgment listed the offense for which Nelson had been convicted as “AGGRAVATED
ASSAULT BODILY INJURY – DEADLY WEAPON,” but in the space to indicate whether
the judgment included a finding on deadly weapon, the judgment reads, “N/A.”  The trial court later entered an amended
judgment, however, stating in the same space that a deadly weapon, a firearm,
had been used. 

            As
a general rule, when the oral pronouncement of sentence and the written
judgment differ, the oral pronouncement controls.  Ex parte
Huskins, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005); see also Ex parte Thompson, 273 S.W.3d 177, 178 n.3 (Tex. Crim.
App. 2008) (when oral pronouncement of sentence and written judgment vary, oral
pronouncement controls and written judgment can be corrected via nunc pro tunc).
 A nunc pro tunc judgment is appropriate
to correct clerical errors in a judgment. 
A clerical error is one “in which no judicial reasoning contributed to
[its] entry, and for some reason [was] not entered of record at the proper
time.”  State v. Bates, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); State v. Dudley, 223 S.W.3d 717, 721–22
(Tex. App.—Tyler 2007, no pet.); see also
Tex. R. App. P. 23.1.  Nunc pro tunc orders are not appropriate to
address “judicial errors,” that is, errors that are the product of judicial
reasoning or determination.  Bates, 889 S.W.2d at 309; Dudley, 223 S.W.3d at 722.

            Here,
the trial court’s amended judgment was an appropriate remedy to make the
written judgment correctly reflect proceedings in the trial court; the jury
clearly made an affirmative finding that Nelson used or exhibited a deadly
weapon, and the trial court’s judgment now correctly reflects that
finding.  See Ex parte Poe, 751
S.W.2d 873, 875–76 (Tex. Crim. App. 1988) (en banc) (once jury finds defendant
used or exhibited deadly weapon during commission of  offense, trial court must enter in judgment a
finding that deadly weapon was used or exhibited);  Jones
v. State, 795 S.W.2d 199, 200 n.1 (Tex. Crim. App. 1990) (purpose of nunc
pro tunc order is to have court records accurately reflect judgment actually
rendered). 

            These
points of error are overruled.

(3)        Nelson
Failed to Preserve His Complaint Regarding Notice of Enhancement Allegations

            At the
beginning of the punishment phase, the State read to the jury two prior felony
convictions for the purpose of seeking an elevated punishment range.  See
Tex. Penal Code Ann.
§ 12.42(d) (Vernon Supp. 2009).  The
indictment had alleged two prior Texas convictions, but when the State’s
attorney read the enhancement allegations at the beginning of punishment, he
instead read one of the Texas convictions specified in the indictment and a
felony conviction from Arkansas. 
Nevertheless, Nelson pled true to both allegations.  Nelson now claims that the oral notice of the
State reading that Arkanasas conviction was insufficient.  We need not address that claim, because no
error was preserved.

            We find
nothing in the record indicating the State ever gave any form of notice that it
would use an Arkansas conviction to enhance Nelson’s range of punishment.  Nevertheless, when the State read the details
of that Arkansas conviction as well as one of the Texas convictions contained
in the indictment’s habitual-offender paragraph, Nelson made no objection.[3]  Rather, he pled “true” to both enhancement
allegations.  When the State offered pen
packets, containing judgments of conviction for the Arkansas felony and the two
Texas felonies, Nelson, through his attorney, said, “Your Honor, those have
been provided to me.  We have no
objections.”   No objection having been
made, we find Nelson failed to preserve for appellate complaint his argument
that he did not receive sufficient notice of the State’s intent to use the
Arkansas conviction for enhancement purposes.

            Nelson cites
Luken v. State, 780 S.W.2d 264, 268 (Tex.
Crim. App. 1989), for the proposition that “a defendant need not object to
an indictment that lacks a notice of enhancement in order to preserve the issue
for review.”  However, Luken involved the State’s failure to
give the defendant notice that the State would seek an affirmative finding on
the use or exhibition of a deadly weapon. 
Luken did not object to the indictment’s lack of a deadly-weapon
allegation.  The Texas Court of Criminal
Appeals pointed out that, in the circumstances of that case, Luken had no
reason to suspect the State would seek such a finding until it asked for a
special issue on the matter in the guilt/innocence charge.  It is true the Luken court “analogize[d] . . . to submission of enhancement counts
at the punishment stage of trial.”  Luken, 780 S.W.2d at 268.  But that discussion, and indeed most of the
discussion in Luken, focused on the
indictment’s lack of notice that the State would seek a finding on use or
exhibition of a deadly weapon.  The
holding of the Texas Court of Criminal Appeals in Luken centers on the fact that, in light of the then recently
enacted Texas Code of Criminal Procedure Article 1.14(b), an indictment is not
defective merely because it omits a deadly-weapon notice, or, conceivably,
enhancement allegations.  It may be that
Nelson interprets the following as relieving him of the duty to object to the
lack of notice:

we would not hold that a trial court is
authorized to find, or to submit the question to the jury whether an accused
has been formerly convicted for purposes of enhancement of punishment under
Chapter 12 of the Penal Code, on the theory that the accused failed to object
that the indictment did not include enhancement allegations. Again, there is no
“defect, error, or irregularity” in an indictment containing no enhancement
counts.  It simply fails to place the
accused’s status as a recidivist in issue. . . .  We similarly decline to hold that under
Article 1.14(b), supra, an accused must object before trial to the failure of
the State’s pleadings to allege use or exhibition of a deadly weapon in order
to preserve any challenge to submission of that issue to the factfinder.

 

Id. 

 

            Unlike
Luken, Nelson was made aware that his status as a recidivist was in issue, as
the indictment alleged two prior felony convictions under the title “HABITUAL
OFFENDER NOTICE” and the possibility of an enhanced range of punishment of not
less than twenty-five years, or more than ninety-nine years or life, was
discussed at voir dire.

            We
also find it significant that Luken
predates Marin v. State, 851 S.W.2d
275, 279–80 (Tex. Crim. App. 1993), which detailed three categories of
rights:  those which must be specifically
invoked or else forfeited, those which must be explicitly waived, and those
which cannot be waived.  We have found no
authority indicating that notice of enhancement allegations, especially in a
situation such as this where the defendant was clearly on notice that
enhancement was being pursued, is a right which either cannot be waived or must
be explicitly waived.  We, therefore,
find that Nelson failed to preserve his claim of lack of advance notice
regarding the State’s use of the Arkansas conviction for enhancement
purposes.  See Harris v. State, 204
S.W.3d 19, 27 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d).[4]  In this connection, it is worth emphasis that
Nelson evinced no surprise or objection when the prospect of the enhanced
sentence range was broached in voir dire, that he later pled true to the
announced enhancement convictions, and that, when the State tendered into
evidence the pen packets—providing the judgments establishing the enhancement
allegations—he affirmatively stated that he had no objection to their admission
and expressly acknowledged that they had been provided to him earlier.

            Finally, we
point out that Nelson’s situation is different from those where a defendant
pleads “true” to enhancement allegations or otherwise fails to object; but
later complains that a prior conviction used for enhancement purposes was not
final or otherwise did not properly engage the applicability of the
habitual-offender statute.  See Williams v. State, No. 06-09-00133-CR,
2010 Tex. App. LEXIS 2257 (Tex. App.—Texarkana Mar. 31, 2010, pet. filed); Ex parte Rich, 194 S.W.3d 508, 513–14
(Tex. Crim. App. 2006); Sanders v. State,
785 S.W.2d 445 (Tex. App.—San Antonio 1990, no pet.).  Nelson’s situation is notice related, in
other words, purely procedural, as contrasted to the other situation, in which
there is a substantive defect in the prior conviction.

            Nelson
failed to preserve this claim for appellate review.[5]  Thus, the result reached by the trial court
should be affirmed.

            There
is, however, a small adjustment needed in the judgment.  The trial court’s amended judgment reads “N/A”
in the blanks for pleas to, and findings on, enhancement paragraphs.  We reform the trial court’s judgment to
indicate that Nelson pled true to the first and second enhancement paragraphs
and that both paragraphs were found to be true. 
See Tex. R. App. P. 43.2(b); Bigley
v. State, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

 

 

 

 

            We
affirm the trial court’s judgment, as reformed.

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          May
10, 2010  

Date Decided:             June
29, 2010

 

Do Not Publish           

 











[1]There
was some indication Nelson’s “apartment” was a room in his parents’ home.  

 





[2]It
is worth pointing out that, even if there was any evidence entitling Nelson to
assert his claim of defense of property, the record is completely devoid of any
justification for his use of deadly force—shooting Bagsby twice and putting the
gun to her head and threatening to kill her. 
See Armstrong v. State, 179 S.W.3d 84, 88 (Tex. App.—Fort Worth  2005, no pet.) (no evidence supporting
Armstrong’s assertion victim had knife, and therefore, Armstrong was justified
in stabbing victim); Hudson v. State,
145 S.W.3d 323, 325 (Tex. App.—Fort Worth 2004, pet. ref’d) (“When there is no
evidence of a belief that force is needed to defend property, a criminal
defendant is not entitled to a jury instruction on defense of property.”); Hernandez v. State, 914 S.W.2d 218, 224
(Tex. App.—El Paso 1996, pet. ref’d) (although there was evidence defendant’s
home had been site of drive-by shooting, that event had already occurred
earlier in evening, hence no evidence to support defensive use of deadly
force).





[3]The
Texas Court of Criminal Appeals has held that when the enhancement allegations
are read at the beginning of the punishment phase, and the defendant offers no
defense and does not request a continuance, constitutionally sufficient notice
has been provided.  Villescas v. State, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) (“due
process does not even require that the notice be given before the guilt phase
begins”; and where defendant does not offer defense to enhancement allegations
or suggest he or she needs continuance in order to prepare defense, “notice
given at the beginning of the punishment phase satisfies the federal
constitution” ).





[4]Harris
was convicted of felony DWI, and his sentence was enhanced under Section
12.42(d) of the Texas Penal Code.  On
appeal, he claimed error, saying that one misdemeanor DWI conviction was used
to elevate his instant charge to a felony; but that same misdemeanor had
previously been used as a predicate to secure a prior felony DWI conviction,
which was then used to enhance his range of punishment at his current
trial.  The appellate court found that
Harris failed to preserve this complaint with a timely trial objection.  Harris,
204 S.W.3d at 27.  Harris, just like
Nelson, was clearly aware that enhancement was being sought.





[5]See also Marshall v. State, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006).  The State alleged prior felony convictions,
but with citation to Section 12.42(b) of the Texas Penal Code, which would
expose Marshall to a first-degree punishment range.  Tex.
Penal Code Ann. § 12.42(b) (Vernon Supp. 2009).  Other felony convictions were noticed, in a
pleading expressing intent to introduce evidence of extraneous acts.  Tex. Code
Crim. Proc. Ann. art. 37.07, § (3)(a), (g) (Vernon Supp. 2009).  The Texas Court of Criminal Appeals noted
that, in the particular circumstances of that case, Marshall may not have been
aware the State was seeking the higher range of punishment provided in Section
12.42(d).  “However, when the jury charge
was read and it became abundantly clear that the state was asking for
enhancement far beyond that specified in its notice to appellant, appellant was
bound to object.”  Marshall, 185 S.W.3d at 903.